STATE OF CONNECTICUT *v.* JONATHAN BRADLEY
(4439)

HULL, SPALLONE and COVELLO, Js.

Argued April 7—decision released August 25, 1987

*Kent Drager,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*Julia DiCocco Dewey,* assistant state's attorney, with whom, on the brief, were *James G. Clark* and *Roland Fasano,* assistant state's attorneys, for the appellee (state).

COVELLO, J. The jury found the defendant guilty of attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-134 (a) (2). In his appeal from the judgment of conviction, he raises three issues: (1) Whether he was deprived of a fair trial and due process by the state's remarks to the jury concerning the defendant's alleged invocation of his fifth amendment right to remain silent; (2) whether the prosecutor's expressing a personal opinion as to the credibility of a witness violated those rights; and (3) whether error has occurred by reason of the court's charging the jury on both types of criminal attempt, i.e., § 53a-49 (a) (1) and § 53a-49 (a) (2), when the accused was formally charged with only a § 53a-49 (a) (2) criminal attempt. We find no error.

The jury could reasonably have found that on November 21, 1984, at approximately 8:30 p.m., the victim was sitting in the front seat of a stopped automobile in the parking lot of the Wilbur Cross High School. The passenger door was suddenly pulled open and a lone assailant, later identified as Lance Sykes, put a gun to the victim's temple and told him to give up his money. A struggle ensued outside of the car, at which point a second assailant, later identified as the defendant, appeared and joined the attack. The victim produced his own revolver and twice shot his original assailant. At this juncture, both would-be robbers fled. Neither the victim nor his companion could identify their attackers who had worn "ski-type" masks over their faces. An immediate canvass of the area hospitals eventually produced Sykes who was suffering from two gunshot wounds. A bullet removed from his thigh was later proved to have been fired from the victim's pistol.

## I

The defendant contends that the prosecutor committed reversible error by introducing evidence and commenting in argument about the defendant's postarrest statement. He claims that the remark was the "functional equivalent" of silence and, therefore, evidence and comment about it violated his federal[1] and state constitutional rights.[2]

Police arrested the defendant on December 19, 1984, on the basis of information supplied by his former girlfriend. They took him to the police station and advised him of his *Miranda*[3] rights. The defendant stated that he understood these rights, and was nevertheless willing to talk to the officers, but he declined to sign a formal waiver statement.

A detective then asked the defendant if he knew about the incident. He stated, "Yes." When asked if he was involved, he responded that he was not going to tell the detective whether he was involved.

The dialogue continued. The defendant first claimed to have no knowledge of his whereabouts on the date and time in question. Some time later in the conversation, he stated that he was not involved in the incident and offered an explanation as to where he had been. The colloquy continued for about one hour.

The prosecutor not only introduced evidence of this conversation but also chose to comment on it four times during closing argument. The defendant at no time objected nor took exception. "We have already held, however, that [incursions into the constitutionally pro-

---

[1] U.S. Const., amends. V and XIV.

[2] Conn. Const., art. I, § 8.

[3] *Miranda* v. *United States,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

tected right to remain silent] . . . are properly reviewable under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), despite the failure to raise them in the trial court. *State* v. *Zeko,* 177 Conn. 545, 553, 418 A.2d 917 (1979); *State* v. *Moye,* 177 Conn. 487, 495–96, 418 A.2d 870, vacated on other grounds, 444 U.S. 893, 100 S. Ct. 199, 62 L. Ed. 2d 129, on remand, 179 Conn. 761, 409 A.2d 149 (1979)." *State* v. *Morrill,* 197 Conn. 507, 536, 498 A.2d 76 (1985).

"It is well established that it is constitutionally impermissible for the 'court or prosecutor to comment on the defendant's silence in the face of in-custody accusations or interrogation.' " *State* v. *Talton,* 197 Conn. 280, 294, 497 A.2d 35 (1985).

The *Miranda* warnings, promulgated as a "means of safeguarding Fifth Amendment rights . . . require that a person taken into custody be advised immediately that he has the right to remain silent, that anything he says may be used against him, and that he has a right to retained or appointed counsel before submitting to interrogation. Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these *Miranda* rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested." *Doyle* v. *Ohio,* 426 U.S. 610, 617, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976). "[S]ilence following *Miranda* warnings is 'insolubly ambiguous' because it may constitute a reliance upon those rights rather than a tacit admission that the accused has an insufficient defense or explanation for his conduct." *State* v. *Talton,* supra, 295.

What makes the *Doyle* rationale inapplicable to the present case is the fact that the defendant did not remain silent thereafter nor did he "ask that the interrogation be ended or indicate reluctance to answer other inquiries." *State* v. *Talton,* supra, 296. "After

being given *Miranda* warnings, the defendant clearly chose to forego his right to remain silent. Once an arrestee has waived his right to remain silent, the *Doyle* rationale is not operative [for the precise reason that] the arrestee has not remained silent . . . ." *State* v. *Talton,* supra. It is the silence following *Miranda* warnings that creates the ambiguity. Once the silence is broken, the ambiguity disappears and along with it disappears the fifth amendment protection that might otherwise be applicable to the situation. The defendant's single paradoxical response to the detective's question does not constitute an assertion of his fifth amendment right when viewed in the context of a dialogue that continued thereafter without protest or apparent hesitation, for an additional hour.

## II

The defendant further contends that the prosecutor committed reversible error in argument to the jury by bolstering the credibility of the prosecution's key witness by repeated expressions of his personal opinion.[4]

The witness was the defendant's former girlfriend who came forward voluntarily and reported the very precise details of the defendant's admission to her that he in fact had collaborated with Sykes in the abortive robbery of November 21, 1984.

Again, we are confronted with the fact that this claim was not presented at the trial. The defendant did not move for a mistrial. He raised no objection to the lan-

---

[4] Although the defendant points to ten alleged incidents of improper bolstering of the witness, examination of the record produces only one sentence that might be so interpreted: "[I]t is the quality of the evidence, the quality of the testimony that you heard that counts, not the quantity. It is not a matter of counting up the number of witnesses in the State's favor or counting up the number of pieces of evidence. It is the quality of the testimony, the quality of the evidence. *I would take one Carmella Ricciardelli to ten other witnesses who were less frank and less open."* (Emphasis added.)

guage used in the state's closing argument and did not request a curative instruction.

In view of the defendant's failure to raise or preserve this assignment of error, the claim is only reviewable now on direct appeal if it falls within the second of the "exceptional circumstances" articulated in *State* v. *Evans,* supra, 70: i.e., consideration of such a claim is only appropriate "where the record adequately supports a claim that a litigant has clearly been deprived of a fundamental constitutional right and a fair trial." Id. That is not the case here. We do not think that the prosecutor's alleged expressions of personal opinion viewed in the context of the totality of the trial, influenced the jury's verdict of guilt. "Where counsel does not choose to [request a curative instruction] or to seek a mistrial, he presumably does not view the remarks as so prejudicial that his client's right to a fair trial is seriously jeopardized." *State* v. *Falcone,* 191 Conn. 12, 23 n.13, 463 A.2d 558 (1983). We can see no reason to depart from our prior holding that the " ' "fact that counsel for the accused took no exception to the remarks of the State's Attorney, either at the time they were made or at the close of his argument, was a waiver of the right of the accused to now press this assignment of error." ' (Citations omitted.) *State* v. *Malley,* 167 Conn. 379, 387, 355 A.2d 292 (1974)." *State* v. *Lubesky,* 195 Conn. 475, 484, 488 A.2d 1239 (1985).

## III

The defendant finally claims that the trial court's instructions to the jury on the definition of criminal attempt deprived him of either his constitutional right to fair notice of the charge against him or his constitutional right to be convicted only upon proof beyond a reasonable doubt. The defendant claims deprivation of both his federal and state constitutional rights under

the fifth, sixth and fourteenth amendments to the United States constitution and under the constitution of Connecticut, article first, § 8.

The defendant concedes that he did not take exception to this charge or raise these claims at trial. "Only in most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court." *State* v. *Evans,* supra, 69. Practice Book § 852 provides that this court "shall not be bound to consider error as to the giving of, *or the failure to give, an instruction* unless the matter is covered by a written request to charge or an exception has been taken immediately after the charge is delivered. . . ." (Emphasis added). "A claimed constitutional error, raised for the first time on appeal, will be examined, if at all, not to ascertain whether the ruling or instruction was undesirable, erroneous, or even universally condemned but rather when reviewed in the context of the entire trial it violated some right guaranteed to the defendant by the fourteenth amendment to the constitution of the United States; *Cupp* v. *Naughten,* 414 U.S. 141, 146, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973); or article first, § 8 of the constitution of Connecticut." *State* v. *Kurvin,* 186 Conn. 555, 564–65, 442 A.2d 1327 (1982). We find no such violation here.

" 'The sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution guarantee a criminal defendant the right to be informed of the nature of the charge against him "with sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise, and . . . to enable him to plead his acquittal or conviction in bar of any further prosecution for the same offense . . . ." *State* v. *Sumner,* 178 Conn. 163, 168, 422 A.2d 299 (1979) . . . .' " *State* v. *Scognamiglio,* 202 Conn. 18, 22, 519 A.2d 607 (1987). "Therefore, for the defend-

ant to establish an infringement of [his sixth amend-
ment (United States constitution) or his article first,
§ 8 (Connecticut constitution)] rights, he must demon-
strate that the court's charge caused him unfair sur-
prise or prejudiced the preparation of his defense."
*State* v. *Franko,* 199 Conn. 481, 490, 508 A.2d 22
(1986).

Examination of the record does not support the
defendant's claim that he was surprised by the disputed
instruction or that his defense was prejudiced in any
way. General Statutes § 53a-49 provides two definitions
of criminal attempt to commit a crime.[5] The first type,
§ 53a-49 (a) (1), deals with the situation where one
engages in conduct which would constitute the offense
if matters were as he perceived them; i.e., some mis-
take in fact prevents these from being a crime even
though the actor intends to commit one. The second
type, § 53a-49 (a) (2), involves carrying out in part some
substantive portions of the proscribed conduct.

The present case involves elements of both types of
attempt. The first assailant, Sykes, accosted the vic-
tim without help from others. The jury could reason-
ably infer that at that point the then absent defendant
was acting as lookout in furtherance of the act of his
colleague whom the defendant mistakenly assumed was
in the process of committing and completing the act

[5] General Statutes § 53a-49 provides in relevant part: "(a) A person is
guilty of an attempt to commit a crime if, acting with the kind of mental
state required for the commission of the crime he: (1) Intentionally engages
in conduct which would constitute the crime if attendant circumstances were
as he believes them to be; or (2) intentionally does or omits to do anything
which, under the circumstances as he believes them to be, is an act or omis-
sion constituting a substantial step in a course of conduct planned to cul-
minate in his commission of the crime.

"(b) Conduct shall not be held to constitute a substantial step under sub-
division (2) of subsection (a) unless it is strongly corroborative of the actor's
criminal purpose."

of robbery.[6] This was not the case, however, because of the victim's successful resistance. It was at this point that the defendant allegedly joined the fray, thereby adding the second type of criminal attempt to his earlier criminal act as lookout.

We conclude that the record does not support the defendant's claim that he was surprised by the disputed instruction or that this instruction prejudiced his defense. The key to the state's case involved the accused's admission to his girlfriend that he was involved in this incident. The heart of his defense and the central issue before the jury was the matter of the truthfulness of her statement and not any factual subtlety that may have occurred at the time of the offense.

For similar reasons, we find no violation of the defendant's constitutional rights to due process. "Due process requires that a criminal defendant be given notice of the specific charge against him and an opportunity to defend against that charge." *State* v. *Franko,* supra, 491–92. Although the information alleged that the defendant had committed only the second type of criminal attempt, as discussed earlier, there was also evidence to support a conviction under the alternate definition of criminal attempt.

The presentation of this evidence gave the defendant adequate notice that he was being accused under both theories of liability. The state could properly have moved during trial for permission to amend the information to conform with this additional proof. Prac-

---

[6] General Statutes § 53a-133 provides in relevant part: "A person commits robbery when, in the course of committing a larceny, he uses or threatens immediate use of physical force upon another person . . . ."

General Statutes § 53a-119 provides in relevant part: "A person commits larceny when, with intent to deprive another of property . . . he wrongfully takes . . . such property from an owner."

tice Book § 624.[7] In the absence of prejudice to the defendant, the trial court would have been justified in permitting such an amendment without violating the defendant's right to due process. *State* v. *Belton,* 190 Conn. 496, 501 n.5, 461 A.2d 973 (1983); *State* v. *Wallace,* 181 Conn. 237, 239, 435 A.2d 20 (1980); *State* v. *Ruiz,* 171 Conn. 264, 269–70, 368 A.2d 222 (1976). "We have already determined that the defendant's ability to present a defense was not prejudiced by the implicit expansion of the information. Accordingly, the record does not support the defendant's claim that his due process rights were violated." *State* v. *Franko,* supra, 492.

There is no error.

In this opinion the other judges concurred.

---

[7] Practice Book § 624 provides in relevant part: "After commencement of the trial for good cause shown, the judicial authority may permit the prosecuting authority to amend the information or indictment at any time before a verdict or finding if no additional or different offense is charged and no substantive rights of the defendant would be prejudiced. An amendment may charge an additional or different offense with the express consent of the defendant."