STATE OF CONNECTICUT *v.* ROBERT PETTERSEN
(6399)

BORDEN, DALY and O'CONNELL, Js.

Argued on October 14—decision released December 13, 1988

*John J. Carta, Jr.,* with whom, on the brief, was *Christopher P. Banks,* for the appellant (defendant).

*Julia DiCocco Dewey,* assistant state's attorney, with whom, on the brief, was *Michael Dannehy,* assistant state's attorney, for the appellee (state).

DALY, J. The defendant appeals from the judgment of conviction, after a jury trial, of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1)[1] and risk of injury to a child in violation of General Statutes § 53-21.[2] On appeal, the defendant claims that the trial court erred (1) in denying his motion to inspect or permit access to the victim's psychiatric and medical records, (2) in disallowing reputation evidence of the victim's character, (3) in allowing the state to cross-examine the defendant's character witnesses, (4) in instructing the jury on constancy of accusation testimony, and (5) in instructing the jury on the sexual assault charge.

The jury could reasonably have found the following facts. The victim turned sixteen years old on Novem-

---

[1] General Statutes § 53a-71 (a) provides in pertinent part: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and such other person is (1) under sixteen years of age . . . ."

[2] General Statutes § 53-21 provides in part: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child . . . ."

ber 19, 1986. The defendant was a close friend of the victim's family for a number of years. The victim's father died in 1980. Shortly thereafter, the defendant began sexually fondling the victim. This abuse continued for approximately two years; thereafter, the defendant began to engage in sexual intercourse with the victim. These assaults continued on a regular basis over the next four years.

Sometime in 1982 or 1983, the victim told her friend, Ruth Cummings, that the defendant was touching her in the "wrong places." Cummings, in turn, told her own mother about the defendant's conduct. Mrs. Cummings then advised the victim's mother about the complaints. When confronted by her mother, the victim denied any such conduct. The defendant also denied any illegal conduct when he was confronted with the accusations by the victim's mother. The victim testified that she did not say anything to her mother about the assaults because she was afraid of the defendant and what he might do to her or her family.

In July, 1986, the victim returned to Connecticut after visiting relatives to find that her mother had moved into the defendant's home. The sexual assaults continued until November 10, 1986. On that date, the victim told her friend, Ella Rollka, that she could not handle the situation with the defendant anymore. Rollka informed a school teacher of the situation and, ultimately, the defendant was arrested. Several witnesses for the state testified that the victim had told them of the assaults. The defendant testified and denied any impropriety.

I

The defendant's first challenge is to the trial court's denial of his motion to inspect or permit access to the victim's psychiatric and medical records. Prior to trial, the defendant subpoenaed psychiatric and medical rec-

ords of the victim relative to her treatment and hospitalization in three institutions from 1986 until the time of trial. In addition, the defendant requested that the court order a psychiatric evaluation of the victim in the event the records indicated that she was incompetent to testify. After a hearing, at which the victim testified, the trial court denied the motions. The trial court held that the defendant failed to present sufficient evidence to warrant an in camera review of the records. The defendant claims on appeal that the effect of these rulings impaired his constitutional right to confrontation to such an extent that he was denied a fair trial.

"The right to confrontation is fundamental to a fair trial under both the federal and state constitutions. . . . It is expressly protected by the sixth and fourteenth amendments to the United States constitution . . . and by article first, § 8, of the Connecticut constitution." (Citations omitted.) *State* v. *Hufford,* 205 Conn. 386, 400–401, 533 A.2d 866 (1987). "The right to confrontation secures to the defendant the opportunity to cross-examine witnesses against him; [*Davis* v. *Alaska,* 415 U.S. 308, 315–16, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974)]; and 'to expose to the jury the facts from which the jurors . . . could appropriately draw inferences relating to the reliability of the witness.' " *State* v. *Hufford,* supra, 401, quoting *State* v. *Gaynor,* 182 Conn. 501, 509, 438 A.2d 749 (1980). While the right of cross-examination is not absolute and the trial court may, in its discretion, limit the testimony, the court may not so restrict cross-examination as to impair the defendant's right to confrontation and deny him a fair trial. *State* v. *Hufford,* supra, 401–402; *State* v. *Asherman,* 193 Conn. 695, 718, 478 A.2d 227 (1987), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985). The question for our review is "whether, in denying the defendant access to the complainant's psychiatric records, the trial court prevented the

defendant from pursuing a relevant line of inquiry reasonably calculated to elicit facts upon which the jury might logically have decided either to disbelieve the complainant or to discount or discredit her testimony." *State* v. *Hufford,* supra.

The defendant does not claim that the trial court rulings prevented him from learning, through the direct examination of any psychiatric personnel, whether the victim had shown any mental abnormality that might have reflected on the credibility of her accusations. See *State* v. *Pierson,* 201 Conn. 211, 224–25, 514 A.2d 724 (1986). Rather, he claims only that the court's denial of access to the psychiatric records impaired his right to confront and cross-examine the victim.

Our case law on the issue of a defendant's right of access to the psychiatric records of the complaining witness is abundant, and the standards set forth in those cases are clear. We therefore turn to *State* v. *Hufford,* supra, *State* v. *Esposito,* 192 Conn. 166, 471 A.2d 949 (1984), and *State* v. *Storlazzi,* 191 Conn. 453, 464 A.2d 829 (1983), for guidance.

When the records sought by the defendant are privileged,[3] the witness' right to privacy must be weighed against the defendant's right to bring to the jury's attention facts affecting the witness' credibility. *State* v. *Hufford,* supra, 402; *State* v. *Storlazzi,* supra, 458. In *Storlazzi,* the Supreme Court approved an in camera inspection by the trial judge of the records of the complaining witness for material relevant to the issue of credibility. After such examination, access to the records will be granted when the material is especially probative of the witness' ability to comprehend, know and correctly relate the truth. With respect to the admissibility of such records, however, "access to 'such [records] must be left to the discretion of the trial

---

[3] General Statutes § 52-146e protects psychiatric records from disclosure.

court which is better able to assess the probative value of such evidence as it relates to the particular case before it'; [*State* v. *Piskorski,* 177 Conn. 677, 737, 499 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979)]; and to weigh that value against the interest in confidentiality of the records. Whether and to what extent access to the records should be granted to protect the defendant's right of confrontation must be determined on a case by case basis." *State* v. *Storlazzi,* supra, 459; *State* v. *Hufford,* supra, 403.

In *State* v. *Esposito,* supra, the court held that, in order to compel the trial court to inspect psychiatric records for potentially impeaching information, the defendant must make a showing that there is reasonable ground to believe that failure to produce the information is likely to impair the defendant's right of confrontation. Id., 179. "Upon such a showing the court may then afford the state an opportunity to secure the consent of the witness for the court to conduct an in camera inspection of the claimed information and, if necessary, to turn over to the defendant any relevant material for the purposes of cross-examination. If the defendant does make such showing and such consent is not forthcoming then the court may be obliged to strike the testimony of the witness. If the consent is limited to an in camera inspection and such inspection, in the opinion of the trial judge, does not disclose relevant material then the resealed record is to be made available for appellate review. If the in camera inspection does reveal relevant material then the witness should be given an opportunity to decide whether to consent to the release of such material to the defendant or to face having her testimony stricken in the event of refusal." Id., 179–80.

In this case, we find that the defendant did make the requisite showing under *State* v. *Esposito,* supra. Dur-

ing the hearing on the defendant's motions, the victim testified as to her use of drugs and alcohol during the period in which she was assaulted by the defendant, as well as to her hospitalization for alcohol abuse, depression and attempted suicide from the date she disclosed the abuse to the authorities through the date of trial. Absent any knowledge of the contents of the psychiatric records, neither we nor the trial court can determine whether they include relevant impeaching evidence that was not cumulative or contrary to her testimony. We therefore conclude that the trial court should have conducted an in camera inspection of the records to ascertain whether they contained information about the mental condition of the victim that would have been admissible to impeach her testimony, thus affording the defendant the full right of confrontation.

The case must be remanded to the trial judge for the purpose of conducting an in camera inspection of the psychiatric records of the victim. In the event that the victim refuses to consent to waive her statutory privilege against disclosure for the purpose of such inquiry, her testimony at trial must be wholly stricken, and, since she was the only witness to the crimes, the defendant must be acquitted due to the insufficiency of the evidence. If, however, the victim consents to the in camera inspection of the records, a new trial must be granted if the trial court finds relevant evidence that would be admissible for impeachment purposes. On the other hand, if no such evidence is found, the judgment of conviction must stand.

Although we remand this case for proceedings consistent with this opinion, our review of the case does not end here. Because the trial court may determine that the records may not be disclosed to the defendant, we must address the remaining issues on appeal.

## II

The defendant's second claim is that the trial court erred when it prevented the defendant's witness, Gail Bacon, from testifying as to her opinion of the victim's reputation for truth and veracity.

Bacon knew the victim through Bacon's employment as a librarian at the elementary school that the victim attended. She was also a Girl Scout leader and knew the victim when she was a scout in Bacon's troop from 1977 to 1980. Bacon did not have any contact, however, with the victim or any of the victim's friends during the three year period prior to trial. The trial court ruled that Bacon could testify as to her personal opinion, but that she could not testify concerning the victim's reputation for truth and veracity since she was not familiar with the victim's reputation in the community and could only testify as to remote events.

In Connecticut, evidence relating to the truth and veracity of a witness may be elicited in one of two ways. First, the veracity of a witness may be attacked by evidence of the witness' general reputation in the community for veracity. *State* v. *Gelinas,* 160 Conn. 366, 367, 279 A.2d 552 (1971). A witness' character for veracity may also be proven by opinion evidence of those who have had an opportunity to form, and who have formed, an opinion as to the character of the witness with respect to truth and veracity. *State* v. *Gelinas,* supra, 368; *State* v. *Cox,* 7 Conn. App. 377, 385, 509 A.2d 36 (1986).

"Whether a witness has had sufficient contact with a person to be qualified to testify as to a particular character trait is a matter peculiarly within the discretion of the trial court and 'its ruling will be disturbed only in a clear case of abuse or of some error in law.' " *State* v. *Egan,* 9 Conn. App. 59, 64, 514 A.2d 493, cert.

denied, 201 Conn. 811, 516 A.2d 886 (1986), quoting *State* v. *George,* 194 Conn. 361, 368–69, 481 A.2d 1068 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 963, 83 L. Ed. 2d 968 (1985). A review of the record indicates that the trial court did not abuse its discretion. The evidence presented showed that Bacon had no personal contact with the victim in the three years prior to trial. The only grounds for the witness' knowledge of the victim's reputation were events that occurred at least six years prior to trial and stories that she had heard from her nieces. It was clearly within the trial judge's discretion to exclude character evidence that was too remote in time to be significant. See *State* v. *George,* supra, 368; McCormick, Evidence (3d Ed.) § 44. Moreover, we cannot conclude that the trial court abused its discretion in disallowing the evidence for lack of a sufficient foundation.

## III

The defendant's third claim is that the trial court erred when it permitted the state to cross-examine two character witnesses by asking whether their favorable testimony would change if they were to assume that the defendant had committed the acts for which he was on trial. The defendant argues that the use of such questions constitutes prejudicial error because they tend to usurp the jury's function to determine guilt or innocence. We agree that the questions were improper.

If a defendant offers evidence of a trait of character as circumstantial evidence to prove that he acted in conformance with that trait and that it is unlikely he committed the crime charged, then the state may offer evidence to disprove the existence of the trait. *State* v. *Martin,* 170 Conn. 161, 163, 365 A.2d 104 (1976). The state may not, however, use specific acts of misconduct to disprove the trait; id.; or to prove the guilt of the defendant as to the crime charged. *State* v.

*DeFreitas,* 179 Conn. 431, 461, 426 A.2d 799 (1980). Nonetheless, the state is allowed to test the basis for the witness' opinion. See *State* v. *DeAngelis,* 200 Conn. 224, 511 A.2d 310 (1986). "When a character witness has given his opinion as to a particular trait, the state may cross-examine that witness concerning specific acts, not to disprove the truth of such facts, but to test the credibility of the character witness by ascertaining his good faith, his source and amount of information and his accuracy." *State* v. *Martin,* supra, 165.

It is clear that the state, in its cross-examination, attempted to test the credibility of the defendant's character witnesses. The questions posed, however, sought speculative responses resting upon an assumption of guilt. That issue is ultimately for the jury to decide.[4]

Although we hold that the trial court abused its discretion in allowing the improper questions, the question remains whether such error was prejudicial or harmless.

Because the error here does not involve a constitutional violation, the burden is on the defendant to demonstrate the harmfulness of the court's error. *State* v. *Jones,* 205 Conn. 723, 732, 535 A.2d 808 (1988). "The defendant must show that it is more probable than not that the erroneous action of the court affected the result." Id. The defendant has not met this burden. In the absence of any showing of prejudice, any discussion of harmfulness is speculative at best. Moreover, a review of the record and transcripts demonstrates that the evidence offered by the state, even without the state's improper questions on cross-examination,

---

[4] We find it persuasive that the federal courts that have addressed this issue have held that questions of character witnesses on cross-examination that are framed so as to assume that the defendant is guilty as charged, are improper. See, e.g., *United States* v. *Williams,* 738 F.2d 172, 177 (7th Cir. 1984); *United States* v. *Polsinelli,* 649 F.2d 793, 797 (10th Cir. 1981); *United States* v. *Candelaria-Gonzalez,* 547 F.2d 291, 294 (5th Cir. 1977).

was sufficient to prove the defendant's guilt beyond a reasonable doubt. See *State* v. *Flinter,* 16 Conn. App. 402, 410, 548 A.2d 1 (1988). We find the error to be harmless because it could not have reasonably affected the jury's verdict.

## IV

The defendant next claims error in the court's charge regarding the effect to be given to constancy of accusation testimony. Specifically, he claims that the charge fell short of the standards set for such a charge by this court and our Supreme Court.

" ' "To determine whether an error in a charge constitutes reversible error, the court must consider the whole charge. . . . In considering the charge as a whole we eschew critical dissection . . . thereby not passing upon the instructions attacked in 'artificial isolation' from the whole charge. . . . The charge must be considered from the standpoint of its effect on the jury in guiding them to a proper verdict." ' " (Citations omitted.) *State* v. *Reddick,* 15 Conn. App. 342, 351–52, 545 A.2d 1109 (1988), quoting *State* v. *Marshall,* 3 Conn. App. 126, 129, 485 A.2d 930 (1985).

The trial court charged the jury on the effect to be given to constancy of accusation testimony as follows: "To corroborate [the victim's] testimony the state is permitted to prove that outside of court she had earlier complained of the injury done to her. This evidence is admitted *solely to corroborate her testimony in court* . . . . It is to be considered by you only in determining that to the extent you find corroboration in her out-of-court statements that you should carefully consider all of the circumstances under which they were made. The fact that she made them out of court is *not being offered to prove that it happened but merely that she claimed it happened, to corroborate her testimony in this courtroom that these things happened."* (Empha-

sis added.) It is clear that the charge given complied with our standards on the admissibility of constancy of accusation testimony. See *State* v. *Ouellette,* 190 Conn. 84, 459 A.2d 1005 (1983). We find that the charge, taken as a whole, could not have misled the jury as to the weight and effect to be given to such testimony.[5]

## V

The defendant's final claim of error concerns the court's charge on the sexual assault count. Specifically, he claims that the court's charge improperly marshaled evidence in favor of the state. The defendant's exception to the charge, however, referred only to the number of assaults the state was required to prove under the information.[6] The ground claimed on appeal was not distinctly presented to the trial court as required by Practice Book § 288. We are not bound to consider it here. *State* v. *Bradley,* 12 Conn. App. 163, 167–68, 529 A.2d 1343, cert. denied, 205 Conn. 810, 532 A.2d 76 (1987).

There is error and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

---

[5] The defendant also claims error in the court's supplemental charge on constancy of accusation testimony. A review of the transcript indicates that he did not except to the supplemental charge. This failure sends a powerful signal that he did not perceive the charge as erroneous. See *State* v. *Mancinone,* 15 Conn. 251, 277, 545 A.2d 1131 (1988). Moreover, we are not bound to consider claims of law not distinctly raised in the trial court. Practice Book § 288; *State* v. *Bradley,* 12 Conn. App. 163, 167–68, 529 A.2d 1343, cert. denied, 205 Conn. 810, 532 A.2d 76 (1987).

[6] The defendant's exception reads as follows: "I would except to the portion of the charge where your Honor emphasized that it only had to happen once under the sexual assault statute because the—they're going to have the information with them and it becomes—when the information says on diverse days between 1980 and 1986, the information seems to imply more than once, and, I think the state is stuck with this information and I would argue that it's got to be a more than once situation here."