**Jonathan BRADLEY, Petitioner–Appellee,**

v.

**Larry MEACHUM, Commissioner of Corrections, Respondent–Appellant.**

**No. 1489, Docket 90–2081.**

United States Court of Appeals, Second Circuit.

Argued Aug. 15, 1990.

Decided Nov. 2, 1990.

339

See also, 12 Conn.App. 163, 529 A.2d 1343.

Kent Drager, Asst. Public Defender, New Haven, Conn., for petitioner-appellee.

Julia DiCocco Dewey, Asst. State's Atty., Wallingford, Conn. (Judith Rossi, Asst.

State's Atty., Wallingford, Conn., of counsel), for respondent-appellant.

Before MINER and ALTIMARI, Circuit Judges, and KELLEHER, Senior District Judge.*

MINER, Circuit Judge:

Respondent-appellant Larry Meachum, Connecticut Commissioner of Corrections, appeals from a judgment entered on February 14, 1990, in the United States District Court for the District of Connecticut (Nevas, *J.*) granting petitioner-appellee Jonathan Bradley's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1988). Meachum contends that, in granting the petition, the district court improperly concluded that Bradley's due process rights were violated by references at trial to Bradley's purported invocation of his fifth amendment right to remain silent. Bradley argues that the district court properly found that his right to remain silent had been violated. As alternative grounds for granting the petition, Bradley argues that the prosecutor improperly bolstered the credibility of the key state witness during the closing argument and that the trial court erred by charging the jury on alternative theories of attempt liability.

We hold that the district court improvidently concluded that Bradley invoked his right to remain silent. We also find that the improprieties in the prosecutor's summation did not substantially prejudice Bradley's right to a fair trial. Finally, we conclude that there was sufficient evidence to support both theories of attempt as presented in the jury charge. Accordingly, the judgment of the district court granting Bradley's petition for a writ of habeas corpus is reversed.

## BACKGROUND

The evidence presented at trial is undisputed. Bradley's former girlfriend, Carmella Ricciardelli, provided the pivotal testimony implicating Bradley in an attempted robbery of Michael Sweeney. On November 21, 1984, Sweeney, an off-duty police officer, was sitting with Nancy Tebbetts in a parked car at the Wilbur Cross High School in New Haven, Connecticut. The passenger door of the car was opened suddenly by a masked assailant, later identified as Lance Sykes. Sykes placed a gun to Sweeney's temple and demanded his money. Sweeney then grabbed the barrel of the gun, and a struggle ensued. A second masked individual, subsequently identified as Bradley, was standing near the driver's side of the car and came to his confederate's aid. During the struggle, Sweeney was able to draw his service revolver, fire it twice, and wound Sykes. Both individuals fled. Sweeney was unable to identify the perpetrators because they were wearing ski masks over their faces.

The police found Sykes at a nearby hospital, where he was being treated for gun shot wounds. They learned that the bullet removed from Sykes was from Sweeney's revolver. Bradley visited Ricciardelli at her home on the night of the robbery. He told Ricciardelli that he had been involved in an attempted robbery and described the details of the crime.

Bradley was arrested on December 19 and eventually charged with attempt to commit robbery in the first degree. *See* Conn.Gen.Stat.Ann. §§ 53a–49(a)(2), 53a–134(a)(2) (West 1990). After his arrest, Bradley was taken to the police station. At the station, Bradley was questioned by Detective LeRoy Dease, who first advised him of his *Miranda* rights. Bradley indicated that he was willing to talk to the police but that he was unwilling to sign a form waiving his rights.

Dease asked Bradley whether he knew about the attempted robbery of Sweeney, and Bradley answered that he did. He then asked Bradley if he was involved in the incident. Dease testified as follows: "At first he told me that he wasn't going to say whether he was involved or not involved and he changed his story and he told me that he was not involved." Bradley also told Dease that he did not have an alibi but then proceeded to account for his

* Of the United States District Court for the Central District of California, sitting by designation.

whereabouts at the time of the robbery. Bradley discussed several subjects, including his family, during the course of his one hour colloquy with the detective.

At trial, the prosecutor introduced evidence of Bradley's conversation with Dease. He also made several references during summation to Bradley's initial refusal to say whether or not he was involved in the crime. Bradley did not object to Detective Dease's testimony or to the prosecutor's references to Bradley's statement.

During the state's closing argument, the prosecutor also made several references to Carmella Ricciardelli, vouching for her credibility and veracity. Moreover, he repeatedly referred to his personal view of the evidence and commented on the strength of Bradley's confession to Ricciardelli on the night of the crime. Bradley did not object to the prosecutor's statements or request a curative instruction. The trial judge did not take corrective action, except to give the standard jury instruction that arguments of counsel are not to be considered evidence.

Bradley did not testify at trial. At the conclusion of the state's case, the court charged the jury on the meaning of attempt by quoting the full text of the applicable Connecticut law. *See* Conn.Gen.Stat. Ann. § 53a–49(a). Although Bradley was indicted for substantial step liability, *id.* § 53a–49(a)(2), the statute quoted by the court included attempt based on a so-called mistake of fact, *id.* § 53a–49(a)(1). Bradley did not object to the instruction. He subsequently was convicted of attempt to commit robbery in the first degree.

Bradley appealed his conviction, claiming that the state's use of his statement that he did not want to say whether or not he was involved in the crime violated his due process rights as enunciated in *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). The Connecticut Appellate Court held that, " 'After being given *Miranda* warnings, [Bradley] clearly chose to forego his right to remain silent,' " and thus *Doyle* was not operative. *State v. Bradley*, 12 Conn.App. 163, 166–67, 529 A.2d 1343, 1345 (*quoting State v. Talton*,

197 Conn. 280, 296, 497 A.2d 35, 44 (1985)), *certif. denied*, 205 Conn. 810, 532 A.2d 77 (1987). It also concluded that the jury charge did not violate Bradley's sixth amendment right to notice of the charges against him and that there was sufficient evidence to support both forms of attempt charged. *Id.* 12 Conn.App. at 169–71, 529 A.2d at 1347. In finding unreviewable Bradley's claim that there were improprieties in the state's summation, the court noted that any possible error did not deny Bradley the fundamental right to a fair trial. *Id.* at 168, 529 A.2d at 1346.

Bradley filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254 (1988), raising the same issues as he raised in his state appeal. The case was referred to a magistrate, who found that Bradley had met the exhaustion requirements for a federal habeas corpus petition. The magistrate concluded that Bradley's statement that he was not going to say whether he was involved in the crime was an invocation of his fifth amendment right to remain silent, and it therefore was erroneous under *Doyle* to refer to that statement at trial. He also found that the evidence did not support the mistake of fact attempt portion of the charge. The magistrate further concluded that the prosecutor's improper bolstering of Ricciardelli's credibility was insufficient to warrant a reversal of Bradley's conviction.

The district court agreed in part with the magistrate's recommendation, holding that Bradley's right to remain silent had been violated. However, it held that the improper jury charge and the bolstering of Carmella Ricciardelli's testimony constituted harmless error. Based on its finding that Bradley's right to remain silent had been improperly used against him, the district court granted the petition for a writ of habeas corpus.

## DISCUSSION

The prosecution is prohibited under the due process clause of the fourteenth amendment from introducing testimony or making reference at trial to a defendant's invocation of the right to re-

main silent. *Doyle v. Ohio*, 426 U.S. 610, 618–19, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976). Before considering whether the dictates of *Doyle* have been violated, a threshold issue exists as to whether Bradley invoked his fifth amendment right. *See Anderson v. Charles*, 447 U.S. 404, 408, 100 S.Ct. 2180, 2182, 65 L.Ed.2d 222 (1980) (per curiam); *United States v. Crowder*, 719 F.2d 166, 171 (6th Cir.1983) (en banc), *cert. denied*, 466 U.S. 974, 104 S.Ct. 2352, 80 L.Ed.2d 825 (1984).

 Invocation of the right to remain silent must be construed liberally. *See Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). An accused need not rely on talismanic phrases or "any special combination of words" to invoke the right. *Quinn v. United States*, 349 U.S. 155, 162, 75 S.Ct. 668, 673, 99 L.Ed. 964 (1955). A court should examine "the entire context in which the claimant spoke" to determine if the right to remain silent has been invoked. *United States v. Goodwin*, 470 F.2d 893, 902 (5th Cir.1972), *cert. denied*, 411 U.S. 969, 93 S.Ct. 2160, 36 L.Ed.2d 691 (1973); *see Coppola v. Powell*, 878 F.2d 1562, 1565 (1st Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 418, 107 L.Ed.2d 383 (1989).

 The facts surrounding Bradley's conversation with Detective Dease were adduced at a pre-trial suppression hearing and were adopted by the state appellate court. A state court's factual findings, made after a hearing, are entitled to a presumption of correctness. 28 U.S.C. § 2254(d); *Ford v. Wainwright*, 477 U.S. 399, 410, 106 S.Ct. 2595, 2602, 91 L.Ed.2d 335 (1986); *Sumner v. Mata*, 455 U.S. 591, 592, 102 S.Ct. 1303, 1304, 71 L.Ed.2d 480 (1982) (per curiam). The hearing revealed that Bradley's statement that he was not going to say whether he was involved in the crime was part of an ongoing stream of speech which included a subsequent denial of his involvement in the robbery.

Bradley's contention that his statement must be viewed in isolation is wide of the mark. He initially stated that he did not wish to discuss his involvement in the crime but immediately denied any connec-

tion to the robbery and proffered an explanation of his whereabouts at the time of the crime. We do not view this conduct as an invocation of the right to remain silent. *See Wilson v. Henderson*, 584 F.2d 1185, 1186–88 (2d Cir.1978), *cert. denied*, 442 U.S. 945, 99 S.Ct. 2892, 61 L.Ed.2d 316 (1979); *Crowder*, 719 F.2d at 170–71 (no invocation of silence where defendant said he wanted to adhere to earlier statement made to the police and refused to discuss the matter further); *United States v. Lorenzo*, 570 F.2d 294, 298 (9th Cir.1978) (intermittent silences in response to questions does not invoke earlier waiver of right); *United States v. Goldman*, 563 F.2d 501, 503–04 (1st Cir.1977) (no waiver based on refusal to respond to single question where defendant gave complete exculpatory story), *cert. denied*, 434 U.S. 1067, 98 S.Ct. 1245, 55 L.Ed.2d 768 (1978); *cf. Anderson*, 447 U.S. at 408–09, 100 S.Ct. at 2182.

Nor are we inclined to find that the statement was "insolubly ambiguous" and therefore protected by the fifth amendment. *See Doyle*, 426 U.S. at 617, 96 S.Ct. at 2244. Bradley stated that he did not wish to discuss his involvement in the crime but immediately "changed his story" and provided an alibi, a clear indication of a willingness to discuss his involvement. "The fact that some might find [Bradley's] decision illogical is irrelevant, for [the Supreme Court has] never 'embraced the theory that a defendant's ignorance of the full consequences of his decisions vitiates'" his unambiguous and voluntary decision to waive his rights. *Connecticut v. Barrett*, 479 U.S. 523, 530, 107 S.Ct. 828, 832, 93 L.Ed.2d 920 (1987) (quoting *Oregon v. Elstad*, 470 U.S. 298, 316, 105 S.Ct. 1285, 1296, 84 L.Ed.2d 222 (1985)) (footnote omitted).

We also are not persuaded by the assertion that Bradley selectively invoked his right to remain silent. While a defendant is free "to terminate questioning ... [to] control the time at which questioning occurs, the subjects discussed, and the duration of the interrogation," *Michigan v. Mosley*, 423 U.S. 96, 103–04, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975), there must be

an indication that the defendant has invoked the right to remain silent. Bradley cannot be said to have invoked his fifth amendment right regarding his willingness to discuss his involvement in the crime because, in the same breath, he denied any involvement. Accordingly, we hold that any reference at trial to Bradley's statement that he would not discuss whether he was involved in the robbery was permissible, because the statement was not the functional equivalent of silence under the fifth amendment.

■ As an alternative ground for granting the petition, Bradley contends that the prosecutor improperly bolstered the credibility of Ricciardelli, the key state witness, during summation. The prosecutor vouched for Ricciardelli's credibility by stating that he "would take one Carmella Ricciardelli to ten other witnesses who were less frank and less open." He interjected his personal view of the evidence and made repeated use of the pronoun "I." He also commented that the quality of Bradley's confession to Ricciardelli was better than one that might have been made to the police.

Respondent avers that Bradley's failure to raise a contemporaneous objection to the summation constitutes a procedural waiver. While the state Appellate Court found Bradley's claim unreviewable, it first examined the record and determined that Bradley was not denied the fundamental right to a fair trial. *State v. Bradley*, 12 Conn. App. at 165, 529 A.2d at 1346. Petitioner notes that procedural waiver may constitute an independent and adequate state ground, barring federal habeas review. *See Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 1044 & n. 10, 103 L.Ed.2d 308 (1989). Under Connecticut law, however, procedural waiver cannot bar a defendant's challenge "involv[ing] his constitutional right to a fair trial." *Malley v. Manson*, 547 F.2d 25, 28 (2d Cir.1976), *cert. denied*, 430 U.S. 918, 97 S.Ct. 1335, 51 L.Ed.2d 598 (1977); *State v. Evans*, 165 Conn. 61, 70, 327 A.2d 576, 582 (1973); *see Ake v. Oklahoma*, 470 U.S. 68, 74–75, 105 S.Ct. 1087, 1091–92, 84 L.Ed.2d 53 (1985). We must follow the guidelines in *Ake* to determine if "a state procedural default ruling is 'independent.' " *Harris*, 109 S.Ct. at 1042 n. 6. Because "resolution of the state procedural law question depends on a federal constitutional ruling, the state-law prong of the court's holding is not independent of federal law." *Ake*, 470 U.S. at 75, 105 S.Ct. at 1092. The district court did not err in considering the propriety of the prosecutor's statements.

■ The prosecutor impermissibly bolstered the credibility of the witness and interjected his personal view of the evidence. *See Floyd v. Meachum*, 907 F.2d 347, 353–55 (2d Cir.1990); *United States v. Modica*, 663 F.2d 1173, 1178–81 (2d Cir. 1981) (per curiam), *cert. denied*, 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982); *see also United States v. Nersesian*, 824 F.2d 1294, 1328 (2d Cir.), *cert. denied*, 484 U.S. 958, 108 S.Ct. 357, 98 L.Ed.2d 382 (1987). "A prosecutor's improper summation results in a denial of due process when the improper statements cause substantial prejudice to the defendant." *Modica*, 663 F.2d at 1181. In determining whether this misconduct amounted to substantial prejudice, we examine " 'the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements.' " *Floyd*, 907 F.2d at 355 (quoting *Modica*, 663 F.2d at 1181).

While we do not condone trial misconduct, the prosecutor's improper behavior, limited as it was to the summation, did not permeate the trial. *See Modica*, 663 F.2d at 1181; *see also Nersesian*, 824 F.2d at 1328. The cumulative effect of the challenged statements here was not so inflammatory or egregious as to require a finding of substantial prejudice. *See Darden v. Wainwright*, 477 U.S. 168, 179–82, 106 S.Ct. 2464, 2470–72, 91 L.Ed.2d 144 (1986); *Floyd*, 907 F.2d at 356; *Nersesian*, 824 F.2d at 1329.

The clear evidence of guilt demonstrates that Bradley was not prejudiced by the prosecutor's improper remarks. *See Floyd*, 907 F.2d at 356; *Nersesian*, 824 F.2d at 1330. Ricciardelli testified about

the details of the aborted robbery based on Bradley's confession to her. Although the victims were unable to identify Bradley, their testimony otherwise mirrored the events as recounted by Ricciardelli. Bradley had tried to contact Sykes at the hospital, indicating that Bradley knew Sykes was hurt. Bradley also provided conflicting alibis to Dease, initially stating that he was at work at the time of the incident and then asserting that he was at a friend's apartment. We find that the impropriety of the prosecutor's conduct did not undermine the integrity of the trial and result in a denial of due process.

■ The final argument raised by Bradley in support of his petition is that the jury charge improperly included mistake of fact attempt, *see* Conn.Gen.Stat.Ann. § 53a–49(a)(1), although no proof of that theory was presented at trial. On appeal to the Connecticut Appellate Court, Bradley also averred that the mistake of fact charge allowed improper enlargement of the charges in the indictment; however, he has abandoned that claim in this court. Section 53a–49, which the trial court quoted in the charge, provides that a person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he:

> (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

*Id.*

■ It is axiomatic that if sufficient evidence supports a jury verdict on one ground but not another and it is impossible to ascertain which ground was relied upon in reaching the verdict, that verdict must be set aside. *Yates v. United States*, 354 U.S. 298, 312, 77 S.Ct. 1064, 1073, 1 L.Ed.2d 1356 (1957); *United States v. Garcia*, 907 F.2d 380, 381 (2d Cir.1990). However, "this [rule] is subject to an exception when the verdict gives the assurance that no prejudice in fact occurred." *United States v. Reid*, 517 F.2d 953, 965 (2d Cir.1975); *see United States v. Jacobs*, 475 F.2d 270, 283–84 (2d Cir.), *cert. denied*, 414 U.S. 821, 94 S.Ct. 116, 131, 38 L.Ed.2d 53 (1973).

The Connecticut trial court's decision to charge the jury on mistake of fact attempt does not provide an alternative ground to grant the writ of habeas corpus. Under section 53a–49(a)(1), a defendant acting with the requisite mental state is guilty of attempt if he or she "[i]ntentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be." The state Appellate Court found that the jury could reasonably infer that Bradley stood on the passenger side of the car as a lookout and initially believed that Sykes had been successful in obtaining Sweeney's wallet. Thus, the court found that sufficient evidence of mistake of fact attempt was presented to the jury. We agree.

Sweeney testified that he responded to Sykes' demand for money by "reaching like I was reaching for my wallet, when I was actually reaching for my gun." Nancy Tebbetts, who was sitting on the driver's side of the vehicle, believed that Sweeney had decided to "give the money up." In recounting Bradley's confession, Carmella Ricciardelli stated that, as Bradley and Sykes approached the car, Bradley handed Sykes the gun and proceeded to the driver's side of the vehicle. She further testified that after Sykes demanded the money from Sweeney, Bradley believed he saw Sweeney "reach[ ] ... to get his wallet." Thus, Bradley initially believed that Sykes had been successful in obtaining Sweeney's wallet. Only after the ensuing struggle did Bradley learn that Sykes did not get the money and, in fact, had been shot.

Culpability for an inchoate offense requires that " '[t]he acts done must be at least the start of a line of conduct which will lead naturally to the commission of a crime which appears to the [defendant] at least to be possible of commission by the means adopted.' " *State v. Green*, 194 Conn. 258, 276, 480 A.2d 526, 536 (1984)

(citation omitted), *cert. denied*, 469 U.S. 1191, 105 S.Ct. 964, 83 L.Ed.2d 969 (1985). As an example of mistake of fact attempt, the official comment accompanying section 53a–49(a)(1) provides that a person who attempts "to pick an empty pocket of another person mistakenly thinking it contain[s] money ... would be guilty of [mistake of fact] attempted larceny." Conn. Gen.Stat.Ann. 53a–49(a)(1) Commission Comment.

We find the example instructive. Here, the jury heard evidence that Bradley gave Sykes the gun, went to the driver's side of the car, heard Sykes demand the money and believed he saw Sweeney hand over his wallet. "On the evidence, the jury could reasonably have found that his intentional conduct, which was beyond mere preparation, was to perform acts and accomplish a result that would constitute [robbery] inasmuch as the circumstances for doing so were, in his belief, accommodating to his criminal purpose." *Green*, 194 Conn. at 276, 480 A.2d at 537. Bradley's mistaken belief that Sweeney had handed Sykes a wallet constitutes a mistake of fact rising to attempt under section 53a–49(a)(1). *Cf. Green*, 194 Conn. at 274–75, 480 A.2d at 536 (defendant who mistakenly believed victim was abiding by his order to remove her clothes committed attempted sexual assault under both definitions of attempt). Accordingly, we agree with the Connecticut Appellate Court that there was sufficient evidence to support both theories of attempt as charged by the trial court.

## CONCLUSION

The judgment of the district court is reversed.