STATE OF CONNECTICUT v. EDWARD GILCHRIST
(8967)

SPALLONE, DALY and LANDAU, Js.

Argued March 20—decision released June 25, 1991

*Suzanne Zitser,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *John C. Smriga,* assistant state's attorney, for the appellee (state).

SPALLONE, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of

attempted murder in violation of General Statutes §§ 53a-49 and 53a-54a, of two counts of robbery in the first degree in violation of General Statutes § 53a-134 (a) (2), and of assault in the second degree in violation of General Statutes § 53a-60 (a) (2). The charges against the defendant arose from two separate incidents. At the close of the evidence, the trial court denied the defendant's motion for judgment of acquittal. On appeal, the defendant claims that the trial court improperly denied his motion because (1) the state failed to offer sufficient evidence to support the defendant's conviction of robbery in the first degree in connection with the 2 a.m. incident because it failed to prove the essential element of a deadly weapon, (2) the state failed to offer sufficient evidence that the defendant committed the 2 a.m. assault with a deadly weapon as that term is defined in General Statutes § 53a-3 (6), (3) the trial court improperly instructed the jury on attempt liability under § 53a-49 (a) (1) where there was no evidence to support such an instruction, thereby violating his constitutional right to be convicted only upon proof beyond a reasonable doubt, (4) the state failed to prove beyond a reasonable doubt that the defendant possessed the requisite intent with respect to the 4 a.m. robbery, and (5) the trial court improperly instructed the jury on General Statutes § 53a-133 (2) with respect to the 4 a.m. robbery where there was no evidence to support such a charge. We disagree with the defendant's claims and affirm the defendant's convictions.

There was evidence adduced at trial to support the facts as follows. On September 17, 1987, at about 1:30 a.m., the victim, Darryl Givens, left a friend's house and walked to a convenience store to purchase cigarettes. As Givens was about to enter the store, the defendant, Edward Gilchrist, approached and asked him if he had any drugs. Givens, who recognized the

defendant from a prior encounter where they had discussed buying drugs, told the defendant to wait a minute and that he could get him some cocaine. Givens proceeded into the store followed by the defendant. Before Givens could make the purchase of cigarettes, he was hit in the face with a gun wielded by the defendant, which resulted in lacerations under Givens' chin and over his eye and in the loss of a tooth. After hitting Givens, the defendant took him to an alley behind the store where he took approximately $15 from one of Givens' pockets. At this point, the victim saw the gun which he described as a black gun which the defendant held in one hand.

Givens, after returning to his friend's house, walked home with another friend. Upon his arrival home, he asked his sister, Wanda Givens, if he could borrow her car to drive himself to the hospital. She would not allow him to borrow her car and he refused her offer to drive him to the hospital. Wanda saw the cuts on her brother's face and noticed the missing tooth. Givens also told her that he had been hit in the face with a gun. Givens decided to walk to Bridgeport Hospital but, upon arriving at the hospital, he remembered that there was a warrant out for his arrest because of a violation of probation. He feared that the hospital authorities would notify the police who in turn would discover the outstanding warrant, and left the hospital. At approximately 4 a.m., he called his sister who agreed to pick him up and drive him to Park City Hospital. She drove to the pay phone from which Givens called, and picked up her brother and another man. On the way to the hospital, Givens asked his sister to stop so he could purchase some cigarettes. She stopped at the same convenience store where the earlier incident involving Givens and the defendant had occurred. As she waited for her brother, Wanda observed the defendant, whom she recognized as a person she had seen before, walk past her car.

As Givens approached his sister's car, he was confronted by the defendant who asked him if he, Givens, was looking for the defendant. Givens did not answer and kept walking to the car. Wanda heard the defendant call to her brother. Her brother asked her to open the rear door on her side of the car, which she did. The defendant then grabbed the car door effectively preventing the victim from getting completely into the car. The victim told his sister that the defendant had robbed him earlier and to drive off. The defendant told Wanda that he would shoot her if she tried to drive away. While pointing a gun at Givens, the defendant went through his pockets and took money from a back pocket. The defendant then pointed the gun at Givens and both Givens and his sister heard a click. The defendant pulled the trigger again and shot the victim in the mouth. The gun used by the defendant was described as black with a barrel six to six and one-half inches long. Wanda heard the shot and observed the defendant running away. She drove her brother to Bridgeport Hospital where it was learned that the bullet from the defendant's gun went through the victim's upper front teeth knocking them out, went through the roof of his mouth and finally became imbedded in the base of his skull. Had Givens not received immediate emergency treatment he would have died. The defendant was subsequently arrested, tried by a jury and convicted.

The defendant's first two claims assert that there was insufficient evidence to prove beyond a reasonable doubt that the defendant used a "deadly weapon" while committing the 2 a.m. robbery and assault. General Statutes § 53a-3 (6) defines a deadly weapon as "any weapon, whether loaded or unloaded, from which a shot may be discharged . . . ."

" ' "Appellate analysis of a claim of insufficiency of the evidence requires us to undertake a twofold task: We must first review the evidence construing it in the

light most favorable to sustaining the trial court's verdict. . . . ' " 'We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt . . . . In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct.' " ' . . . " ' " (Citations omitted.) *State* v. *Allen,* 216 Conn. 367, 380–81, 579 A.2d 1066 (1990); *State* v. *Anderson,* 212 Conn. 31, 44, 561 A.2d 897 (1989).

In order to find that the gun used in the 2 a.m. robbery and assault was operable, as defined in § 53a-3 (6), the jury would be required to infer that the gun used in the 2 a.m. robbery was the same one used by the defendant when he fired the gun into the victim's mouth causing him life threatening injuries. We find that there was sufficient evidence presented to the jury from which it could have reasonably and logically drawn such an inference. Wanda Givens described the gun fired at 4 a.m. as black and about six to six and one-half inches long. The victim described the gun used during the 2 a.m. robbery as black and indicated that it was approximately the same size as that described by his sister. In addition, the jury was aware that both crimes involved the defendant in possession of a black handgun, that the crimes took place at the same location on the same evening and only two hours apart. Whether such evidence is sufficient is within the province of the jury to decide. *State* v. *Scielzo,* 190 Conn. 191, 197, 460 A.2d 951 (1983). It is also for the jury to determine the credibility and the effect to be given the testimony. *State* v. *Grant,* 177 Conn. 140, 142, 411 A.2d 917 (1979). Moreover, it is the jury's right to consider evidence, draw logical deductions and make reasonable inferences from facts proven. *State* v. *Schoenbneelt,* 171 Conn. 119,

126, 368 A.2d 117 (1976). The jury's conclusion in this case, that the gun used in the 2 a.m. robbery and assault was operable, is a logical, rational and reasonable inference lawfully drawn from the evidence. Accordingly, we reject the defendant's first two claims.

In his third claim, the defendant argues that the trial court improperly instructed the jury on both subdivisions of § 53a-49 (a).[1] He claims that these two subdivisions are conceptually distinct and that his conviction violated his constitutional right to be convicted only upon proof beyond a reasonable doubt. This claim is also without merit.

"There are two essential elements of an attempt under this statute. They are, first, that the defendant had a specific intent to commit the crime as charged, and, second, that he did some overt act adapted and intended to effectuate that intent." *State* v. *Mazzadra*, 141 Conn. 731, 734, 109 A.2d 873 (1954). " ' "[T]he attempt is complete and punishable, when an act is done with intent to commit the crime, which is adapted to the perpetration of it, whether the purpose fails by reason of interruption . . . or for other extrinsic cause." . . . ' " *State* v. *Green*, 194 Conn. 258, 276, 480 A.2d 526 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 964, 83 L. Ed. 2d 969 (1985); *State* v. *Wilson*, 30 Conn. 500, 506 (1862). Both § 53a-49 (a) (1) and (2) require that the state prove both intent and conduct to sustain a conviction. On the evidence, the jury could reasonably have found that the defendant's intentional conduct, which

---

[1] General Statutes § 53a-49 provides in relevant part: "CRIMINAL ATTEMPT: SUFFICIENCY OF CONDUCT; RENUNCIATION AS DEFENSE. (a) A person is guilty of attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

was beyond mere preparation, was to accomplish a result that would constitute the crime charged inasmuch as the circumstances for doing so were, in his belief, accommodating to his criminal purpose, thereby satisfying § 53a-49 (a) (1). Furthermore, the evidence was sufficient for the jury reasonably to have found that the defendant's conduct constituted a substantial step toward the commission of the crime, thereby satisfying § 53a-49 (a) (2). See, e.g., *State* v. *Green,* supra, 275–77. Once the jury found these elements proven beyond a reasonable doubt, their duty was complete and they were not required to designate a particular statutory section. The evidence that the defendant shot the victim in the mouth adequately supports the jury's conclusions that the defendant shot the victim with the intent to murder him.

The defendant's fourth claim, that there was insufficient evidence to find him guilty of the 4 a.m. robbery, is wholly without merit. The evidence shows that, while holding the victim at gun point, the defendant went through the victim's pockets until he found money and then took it. The sufficiency of the evidence analysis stated above in our review of the defendant's first and second claims is equally applicable here. Construing the evidence in the light most favorable to sustaining the jury's verdict, we find that the jury could reasonably have concluded that the defendant was guilty of the 4 a.m. robbery.

Finally, the defendant argues that there was insufficient evidence to find him guilty of the 4 a.m. robbery under either subdivision of General Statutes § 53a-133. The trial court in explaining robbery to the jury read to them both subdivisions (1) and (2) of § 53a-133. Again there was evidence before the jury to support a conviction under both subdivisions. Wanda Givens, under threat of being shot, was ordered not to drive away from the scene by the defendant which forced her to

"engage in other conduct which aids in the commission of the larceny." General Statutes § 53a-133 (2). The victim was also under gunpoint and threats, which prevented or overcame his resistance to the taking of his property, the money from his back pocket. General Statutes § 53a-133 (1). Our analysis of sufficiency of evidence claims, utilized in our review of the defendant's first, second and fourth claims, is equally applicable here. There was sufficient evidence to support the defendant's conviction of robbery in connection with the 4 a.m. incident. See, e.g., *State* v. *Scott,* 20 Conn. App. 513, 517, 568 A.2d 1048, cert. denied, 214 Conn. 802, 573 A.2d 316 (1990); see also *State* v. *John,* 210 Conn. 652, 688, 557 A.2d 93, cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989).

In sum, the defendant's assertions with regard to sufficiency of the evidence, set forth in his first, second, fourth and fifth claims fail because the evidence supports the verdicts. The defendant's third claim also fails because the trial court's charge on attempt was proper and in accordance with applicable law.

The judgment is affirmed.

In this opinion the other judges concurred.