# STATE OF CONNECTICUT *v.* WILLIE COX
## (SC 18211)

Rogers, C. J., and Katz, Palmer, Vertefeuille and Zarella, Js.

Argued November 18, 2008—officially released August 25, 2009

*David J. Reich*, special public defender, for the appellant (defendant).

*Rocco A. Chiarenza*, special deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Robert J. O'Brien*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

VERTEFEUILLE, J. The defendant, Willie Cox, appeals[1] from the judgment of conviction, rendered after a jury trial, of attempt to commit assault of a peace officer in violation of General Statutes §§ 53a-167c[2] and 53a-49.[3] On appeal, the defendant claims that the state

[1] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] General Statutes § 53a-167c provides in relevant part: "(a) A person is guilty of assault of public safety . . . personnel when, with intent to prevent a reasonably identifiable peace officer . . . from performing his or her duties, and while such peace officer . . . is acting in the performance of his or her duties, (1) such person causes physical injury to such peace officer . . . ."

Although § 53a-167c (a) has been amended since the time of the offense in the present case; see, e.g., Public Acts 2006, No. 06-196, § 185; Public Acts 2008, No. 08-150, § 54; those amendments are not relevant to this appeal. For purposes of convenience, references herein to § 53a-167c (a) are to the current revision of the statute.

[3] General Statutes § 53a-49 (a) provides: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a

adduced insufficient evidence to sustain his conviction. We reverse the judgment of conviction.

The jury reasonably could have found the following facts. In the early afternoon of December 20, 2005, the New Alliance Bank on Quinnipiac Avenue in New Haven was robbed. Witnesses inside the bank claimed that the person who committed the robbery was a dark skinned male, wearing a black hooded jacket and a mask, and carrying what appeared to be a handgun. The perpetrator approached a bank teller, jumped over the counter after telling the teller to lie on the floor, took money off the counter and from a box that the teller had been handling, jumped back over the counter, and ran out the door through which he had entered. The bank's security guard tried to stop the man as he fled, but the man escaped.

As the perpetrator fled, both the security guard and a patron of the bank followed him. The patron was able to follow the perpetrator up the street and saw him get into the passenger side of a parked white automobile. The patron noticed that a man who had appeared to be lying down in the driver's seat sat up and drove the vehicle away. The patron was able to see the license plate number of the automobile before it pulled away. He also identified the automobile as a white Mitsubishi Eclipse with a black convertible top. The patron then returned to the bank and reported everything he had seen to the police.

A few blocks away, Officer David Runlett, a member of the New Haven police department, was directing traffic when he received a broadcast from the police dispatcher stating that the bank had been robbed and

substantial step in a course of conduct planned to culminate in his commission of the crime." For convenience, we refer to subdivision (1) as the "attendant circumstances" section of the statute and subdivision (2) as the "substantial step" section of the statute.

giving a description of the vehicle and the two people involved. Shortly thereafter, he spotted a vehicle approaching him that matched the description of the getaway vehicle. Runlett drew his service issued weapon, pointed it at the operator of the vehicle, and ordered him to stop. The operator stopped the vehicle and, after being ordered by Runlett to put his hands up, did so. The operator apparently changed his mind, however, and did not keep his hands up as ordered. Runlett began to approach the vehicle, ordering the driver to keep his hands up, when he observed a second man in the vehicle, the defendant, sitting in the backseat.

Runlett then observed that the defendant pointed his arms "aggressive[ly]" at Runlett, as if he were holding a weapon. Runlett did not, however, see or identify any particular weapon in the defendant's hands. The operator of the vehicle was positioned between Runlett and the defendant so that neither Runlett nor the defendant could have fired a weapon without first hitting the operator. Runlett began to move backward, creating distance between himself and the vehicle, when he heard the engine of the vehicle start revving. The operator of the vehicle then suddenly drove the car directly toward Runlett. As a result, Runlett fired his gun at the vehicle. Runlett continued to move backward and the vehicle sped past him. The vehicle subsequently was stopped by several police cruisers, and the operator was apprehended after a foot chase. The defendant, who also had fled on foot after the vehicle was stopped, was apprehended later that evening at a nearby house.

The record reveals the following procedural history. The defendant subsequently was charged in a three count information with: (1) robbery in the first degree in violation of General Statutes § 53a-134 (a) (4); (2) larceny in the third degree in violation of General Statutes § 53a-124 (a) (2); and (3) attempt to commit assault

of a peace officer in violation of §§ 53a-167c (a) and 53a-49 (a).[4] During a jury trial, the state presented the testimony of Runlett, as well as the bank security guard, the bank teller, and several patrons of the bank who had witnessed the robbery. They all testified that the perpetrator carried a gun at the time of the robbery. The state also presented the testimony of Stanley R. Orzechowski, Jr., a bail enforcement agent, who was following the vehicle and corroborated Runlett's testimony. Orzechowski testified that after hearing a radio transmission concerning the description of a vehicle involved in a bank robbery, he observed a vehicle matching the description traveling near the location of the bank. He then followed the vehicle and observed the altercation between Runlett and the operator of the vehicle after the vehicle had been stopped. After Orzechowski observed the operator of the vehicle put his hands up and then bring them back down, he noticed a bald male passenger—the defendant—suddenly sit up in the backseat of the automobile. Orzechowski observed that the defendant pointed what appeared to be a weapon at Runlett. Orzechowski did not testify as to whether he observed the defendant attempt to use the gun.

Finally, the state presented the testimony of Miretzky Torres, a witness with whom the defendant had a brief conversation after fleeing the police stop earlier in the day and before being apprehended by the police. Torres testified that the defendant had surprised her as she was leaving the apartment of a friend and had offered her $20 for a short ride. She further testified that the defendant had admitted to her that he had robbed a bank earlier that day and that he needed to rejoin his friends. The defendant also told Torres that he had not carried a "real" gun during the robbery, but instead merely a BB gun. Torres testified that she was fright-

---

[4] See footnotes 2 and 3 of this opinion.

ened and had informed the defendant that she could not give him a ride because she did not have a car. She then reported the incident to the police, who used the information to apprehend the defendant.

After the state rested its case, the defendant filed a motion for a judgment of acquittal, which the trial court denied. The trial court then discussed with counsel for the parties how it intended to instruct the jury. During that discussion, neither the parties nor the trial court specifically referenced the instructions to be given with regard to the charge of attempt to commit assault of a peace officer. Thereafter, the trial court instructed the jury on each count of the information. Significantly, with regard to the charge of attempt to commit assault of a peace officer, the trial court instructed the jury only on the attendant circumstances section of the attempt statute, § 53a-49 (a) (1), and not on the substantial step section.[5] After the trial court completed its jury instructions, it briefly excused the jury so that it could hear any exceptions from the parties as to its charge. The state commented on the scope of the trial court's jury charge with regard to the robbery and larceny charges, but it failed to take exception to or address in any way the charge with regard to attempt to commit assault of a peace officer. Neither party filed a request to charge the jury on the substantial step section of the attempt statute, § 53a-49 (a) (2), and neither party took exception to the trial court's failure to charge the jury on that section.

---

[5] The trial court instructed the jury as to the third count of the information as follows: "Count number three, attempt—attempted assault [of] a peace officer. The defendant is charged with the crime of attempted assault. A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for the commission of the crime, he intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be. . . . [T]he state must prove beyond a reasonable doubt that the defendant intentionally engaged in conduct that would constitute the crime of assault [of] a peace officer if attendant circumstances were as he believed them to be."

After the jury's deliberations, the defendant was acquitted of the robbery and larceny charges and was convicted only of attempt to commit assault of a peace officer in violation of §§ 53a-167c (a) and 53a-49 (a). The trial court thereafter rendered judgment in accordance with the jury's verdict, and sentenced the defendant to eight years incarceration. This appeal followed.

On appeal, the defendant claims that the evidence presented at trial was insufficient to support a conviction of attempt to commit assault of a peace officer. Specifically, the defendant contends that, because the trial court instructed the jury only on the attendant circumstances section of the criminal attempt statute, § 53a-49 (a) (1), and not on the substantial step section, § 53a-49 (a) (2), and because of the state's conduct throughout trial, culminating with its failure to take exception to the trial court's jury instruction, the state implicitly waived any right to a charge under the substantial step section. In addition, the defendant contends that the evidence offered by the state was insufficient to satisfy the attendant circumstances section of the attempt statute, the only section on which the trial court instructed the jury, and his conviction therefore should be reversed. In response, the state asserts that the defendant's claim is actually one of instructional impropriety by the trial court, not insufficiency of the evidence. The state claims that because this instructional claim was not preserved by the defendant at trial, the defendant is not entitled to appellate relief, and his conviction should be affirmed. Under the unique facts and circumstances of this case, we agree with the defendant.

We begin our review with an analysis of the crime of attempt to commit assault of a peace officer in violation of §§ 53a-167c (a) and 53a-49 (a). See footnotes 2 and 3 of this opinion. "Under . . . § 53a-49 (a), '[a] person is guilty of an attempt to commit a crime if,

acting with the kind of mental state required for commission of the crime he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.' . . . Essentially, an attempt under § 53a-49 (a) is an act or omission done with the intent to commit some other crime. The rationale is that while a defendant may have failed in his purpose, his conduct is, however, criminally culpable, and if carried far enough along causes a sufficient risk of harm to be treated as a crime in and of itself." *State* v. *Green,* 194 Conn. 258, 271–72, 480 A.2d 526 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 964, 83 L. Ed. 2d 969 (1985).

Each subdivision of § 53a-49 (a) sets forth an alternative way to commit attempt, and the difference between the subdivisions is significant. "The first type, § 53a-49 (a) (1), deals with the situation where one engages in conduct which would constitute the offense if matters were as he perceived them; i.e., some mistake in fact prevents these from being a crime even though the actor intends to commit one. The second type, § 53a-49 (a) (2), involves carrying out in part some substantive portions of the proscribed conduct." *State* v. *Bradley,* 12 Conn. App. 163, 170, 529 A.2d 1343, cert. denied, 205 Conn. 810, 532 A.2d 77 (1987); see also *State* v. *Gilchrist,* 24 Conn. App. 624, 638–39 n.9, 591 A.2d 131, cert. denied, 219 Conn. 905, 593 A.2d 131 (1991). "An instruction on [§ 53a-49 (a) (1)] should be given when the evidence indicates that a perpetrator failed to accomplish or complete all the elements of a particular crime solely because the attendant circumstances were not as the perpetrator believed them to be, rendering the commission of the crime impossible. Examples of a violation

of § 53a-49 (a) (1) would be a pickpocket's failure to complete a larceny because his hand was in an empty pocket, or an attempt by an accused to bribe a juror but mistakenly approaching a nonjuror. . . . On the other hand, a court should charge on § 53a-49 (a) (2) when the evidence indicates that a perpetrator has done something which, under the circumstances as he believed them to be, is an act constituting a substantial step in a course of conduct planned to culminate in his commission of a particular crime. In other words, this sub[division] is directed at the more common attempt situations [wherein] the actor's conduct falls short of the completed offense for reasons other than impossibility." (Citations omitted; internal quotation marks omitted.) *State* v. *Gonzalez*, 222 Conn. 718, 724–25, 609 A.2d 1003 (1992); see also *State* v. *Gilchrist*, supra, 24 Conn. App. 638–39 n.9.

In the present case, the state set forth its allegations with regard to the charge of attempt to commit assault of a peace officer in the third count of the information. This count did not specify which subdivision of the attempt statute the state was claiming the defendant had violated.[6] At the beginning of trial, the state did not deliver an opening statement to the jury, and instead proceeded immediately with the direct examination of its first witness after the judge finished introducing the case and reading the information to the jury. It thus did not take the opportunity to explain the elements of § 53a-49 (a) for the jury. Additionally, throughout the

---

[6] In its entirety, count three of the information provides: "And the [assistant state's] [a]ttorney aforesaid further accuses [the defendant] of attempted assault [of] a peace officer and charges that at the city of New Haven on December 20, 2005, in the area of Quinnipiac Avenue and Kenney Drive at approximately 1:15 p.m., with intent to prevent a reasonably identifiable peace officer from performing his duties while said peace officer was acting in the performance of his duties, did attempt to cause physical injury to such peace officer; namely [Officer Runlett], in violation of § 53a-167c (a) of the . . . General Statutes."

presentation of its evidence, the state failed to identify, one way or the other, the subdivision under which the defendant was being charged. For example, although the testimony of many of the state's witnesses supported the state's theory that the defendant possessed a gun at the time of the robbery, the state did not specifically highlight for either the trial court or the jury whether this information was relevant to satisfaction of either the attendant circumstances section, § 53a-49 (a) (1), or the substantial step section, § 53a-49 (a) (2).

After the close of evidence but before the delivery of closing arguments, the trial court offered both parties the opportunity to submit requests to charge and discuss the charge. The defendant submitted his requests first and did not make any requests as to the jury charge on attempt to commit assault of a peace officer, focusing his requests on legal principles regarding circumstantial evidence and eyewitness accounts. The state specifically was offered an opportunity to rebut the defendant's requested charges and to add any requests of its own, but it declined to make any specific requests, including any concerning the attempt charge. The trial court, of its own volition, explained to both parties that it would "instruct [the jury] on attempt and, of course, robbery. Robbery—Attempt to assault a police officer, that's count number three." That was the only mention of the assault charge by the trial court, the state, or the defendant at this conference.

During its closing argument to the jury, the state again failed to identify the elements of § 53a-49 (a) that the jury should consider in its deliberations. The state addressed the charge of attempt to commit assault of a peace officer only briefly and vaguely. It did not identify either subdivision of § 53a-49 (a) or clarify in any way

the required elements of an attempted crime.[7] After closing arguments by both parties, the trial court stopped the trial proceedings to inquire whether either party had any last minute change with regard to the charge, and both parties answered in the negative.

The trial court thereafter instructed the jury and limited the attempt charge to only the attendant circumstances section, § 53a-49 (a) (1). See footnote 5 of this opinion. The state failed to take any exception to the attempt charge.[8] The jury's first and only introduction to either subdivision of the attempt statute therefore came with the trial court's jury charge. On the basis of these facts, we conclude that the state implicitly waived its right to charge the defendant under the substantial step section of the attempt statute, § 53a-49 (a) (2), and its waiver limited the jury's consideration of the charge

---

[7] The relevant portion of the state's closing argument to the jury is as follows: "The felony third count we have attempted assault [of] a peace officer. That occurred a few minutes later over on Kenny Drive and Quinnipiac Avenue. And what the elements are there is that with intent to prevent a reasonably identifiable peace officer, and you heard [Officer] Runlett indicate that he was working an extra duty job in full uniform with a vest that has police on it, so clearly he is reasonably identifiable, and attempting from performing his duties while he was acting in the performance of his duty. So while he received a broadcast about the bank robbery and about the description of [a] car, attempted to stop the car he believed [was] involved in it, therefore performing his duties, when the person in the backseat jumped up and pointed at him in an aggressive manner, he had to backtrack and get out of the way, fire shots. So, clearly, he was not able to do his duties. And what was the person attempting to do if he had a gun? Cause physical injury, obviously. If you shoot someone you're going to cause physical injury to that peace officer. So those are the elements of the crime."

[8] We briefly note that the state, and not the defendant, had the burden to take exception to the improper jury instruction by the trial court. It would be fundamentally unfair and unreasonable to place the burden on the defendant to take exception to an improper jury instruction that benefited him by narrowing the charge against him. The defendant has no obligation to do the state's job for it. In such a case, the state bears the burden of taking an exception. See, e.g., *State* v. *Torres*, 210 Conn. 631, 642–43, 556 A.2d 1013 (1989) (where fundamental right is violated, burden is on state and not defendant to prove, for example, harmless impropriety).

of attempt to commit assault against a peace officer to only the attendant circumstances section, § 53a-49 (a) (1). See *Stewart* v. *Tunxis Service Center*, 237 Conn. 71, 80–81, 676 A.2d 819 (1996) ("Waiver does not have to be express, but may consist of acts or conduct from which waiver may be implied. . . . In other words, waiver may be inferred from the circumstances if it is reasonable to do so." [Internal quotation marks omitted.]), quoting *Hensley* v. *Commissioner of Transportation*, 211 Conn. 173, 179, 558 A.2d 971 (1989); *Auerbach* v. *Auerbach*, 113 Conn. App. 318, 325, 966 A.2d 292 (same), cert. denied, 292 Conn. 901, 971 A.2d 40 (2009); see also *Cassella* v. *Kleffke*, 38 Conn. App. 340, 348, 660 A.2d 378 ("[i]n determining waiver, the conduct of the parties is of great importance"), cert. denied, 235 Conn. 905, 665 A.2d 899 (1995). Our review, therefore, is limited to whether the evidence at trial was sufficient to support a conviction under the attendant circumstances section of the attempt statute, § 53a-49 (a) (1).

We first set forth the applicable standard of review. The standard governing our review of sufficiency of evidence claims is well established. "In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Citation omitted; internal quotation marks omitted.) *State* v. *Jackson*, 257 Conn. 198, 204–205, 777 A.2d 591 (2001); see also *State* v.

*Silva*, 285 Conn. 447, 459, 929 A.2d 581 (2008); *State* v. *Aloi*, 280 Conn. 824, 842, 911 A.2d 1086 (2007).

In order to convict the defendant under the attendant circumstances section, the state needed to present evidence that, with the intent to impede Officer Runlett in the performance of his duties, the defendant attempted to assault Runlett, but did not actually do so because some mistake in fact prevented his conduct from constituting a crime. See *State* v. *Bradley*, supra, 12 Conn. App. 170. For example, if the state had presented evidence that the defendant had pulled the trigger of the gun believing that it would fire but was unable to fire the shot at Runlett because the gun was broken, the state would have provided sufficient evidence to support a finding of mistake of fact. The state, however, presented no such evidence about any mistake of fact. While the testimony of Runlett and Orzechowski supported the state's theory that the defendant possessed a gun, neither testified as to whether the gun was loaded or in working condition, or whether the defendant pulled the trigger or even attempted to pull the trigger. Moreover, the testimony of Torres, the witness with whom the defendant spoke before being arrested, was that the defendant had admitted to her that he had carried only a BB gun and not a "real" gun. She did not testify as to whether the defendant indicated to her whether the BB gun was loaded or even operational. Torres also did not testify as to whether he told her if he had used or attempted to use the gun. There is, therefore, no reasonable view of the evidence that supports the jury's verdict that the defendant was guilty of attempt to commit assault of a peace officer under § 53a-49 (a) (1), the attendant circumstances section of the attempt statute.[9]

---

[9] In the present case, the evidence that was presented indicated that the defendant acted in a way "constituting a substantial step in a course of conduct planned to culminate in his commission of a particular crime." *State* v. *Gonzalez*, supra, 222 Conn. 725. Specifically, the state presented evidence that would have supported a finding that the defendant, while in

Under the unique circumstances of this case, where the information was not specific as to which section of the attempt statute the state was alleging, the evidence presented did not clarify this omission, and the trial court, with the state's acquiescence, instructed the jury only on the attendant circumstances section of the attempt statute, and, furthermore, there was insufficient evidence to convict on that section, we must reverse the judgment of conviction.

The judgment is reversed and the case is remanded with direction to render judgment of not guilty on the charge of attempt to commit assault of a peace officer in violation of §§ 53a-167c (a) and 53a-49 (a).

In this opinion the other justices concurred.

the vehicle during the encounter with Officer Runlett, was carrying a gun and pointed it at Runlett with the required intent under § 53a-167c (a). A jury reasonably could conclude that the act of pointing a gun at a police officer may constitute a substantial step in a course of conduct that could lead to an assault against a peace officer. See *State* v. *McCall*, 62 Conn. App. 161, 169, 780 A.2d 134, cert. denied, 258 Conn. 935, 785 A.2d 231, cert. dismissed, 258 Conn. 935, 785 A.2d 232 (2001). The evidence presented thus may have supported a conviction under § 53a-49 (a) (2), the substantial step section of the attempt statute.