******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JOSE
MORENO-HERNANDEZ
(SC 18919)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald,
Espinosa and Robinson, Js.

*Argued March 17—officially released June 30, 2015*

*Richard E. Condon, Jr.*, senior assistant public
defender, for the appellant (defendant).

*Nancy L. Chupak*, senior assistant state's attorney,
with whom, on the brief, were *Michael Dearington*,
state's attorney, and *Stacey Haupt Miranda*, senior
assistant state's attorney, for the appellee (state).

*Opinion*

ZARELLA, J. The present appeal requires us to define the scope of liability under our criminal attempt statute, General Statutes § 53a-49. Section 53a-49 (a) makes it a crime for an individual, acting with the intent required for the commission of the predicate crime, to intentionally engage in conduct that would constitute the crime if the attendant circumstances were as he believed them to be; General Statutes § 53a-49 (a) (1) (attendant circumstances subdivision); or to intentionally take a substantial step in a course of conduct planned to culminate in the commission of the crime. General Statutes § 53a-49 (a) (2) (substantial step subdivision). In the present case, the defendant, Jose Moreno-Hernandez, was charged with, inter alia, attempt to commit murder under only the attendant circumstances subdivision, and a jury found him guilty as charged. On appeal, the defendant claims that the trial court incorrectly denied his motion for a judgment of acquittal because the state failed to prove beyond a reasonable doubt that he had attempted to commit murder under the attendant circumstances subdivision. The defendant concedes that the jury would have found him guilty under the substantial step subdivision if he had been charged under that subdivision but claims that the attendant circumstances subdivision is simply inapplicable in the present case. We disagree and, accordingly, affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In the early morning hours of March 27, 2009, the victim[1] finished her shift at the Temple Grill, a restaurant in the city of New Haven, where she worked as a waitress. As she was leaving, the defendant, who worked at the restaurant as a dishwasher, asked her for a ride home, and the victim agreed. The defendant gave the victim directions to where he lived, but, after forty-five minutes of driving, the victim was lost and they still had not yet arrived at the defendant's home. The victim eventually pulled over, apologized, and asked the defendant to get out of her car. At that point, the defendant began making sexual advances toward the victim, and, when she resisted, he struck her in the face. The defendant repeatedly sexually assaulted the victim inside the car and physically assaulted her when she resisted. The victim attempted to call 911 and escape multiple times, but the defendant stopped her each time.

After assaulting the victim inside her car, the defendant drove the car to a public park and forced the victim to a remote area in the woods. There, the defendant continued to sexually and physically assault the victim. At a certain point, the defendant told the victim that he was going to kill her, and he struck her with his fist and a tree branch, kicked her with his boots, and twisted her head and neck. The victim stopped reacting to the

defendant's blows in an attempt to lead him to believe that she was dead. Finally, after the defendant stopped striking the victim and left, she ran from the park to a nearby house and called the police. The police apprehended the defendant within hours, and he confessed to physically and sexually assaulting the victim. The defendant told police that he had tried to kill the victim because he thought she would report the sexual assault and that, when he left the park, he thought that he had killed her.

The defendant was charged with five counts of first degree sexual assault in violation of General Statutes § 53a-70 (a) (1), one count of first degree kidnapping in violation of General Statutes § 53a-92 (a) (2) (A), one count of first degree assault in violation of General Statutes § 53a-59 (a) (1), and one count of attempt to commit murder in violation of General Statutes §§ 53a-54a (a) and 53a-49 (a) (1). While the state was proceeding with its case against the defendant, the trial court held a charging conference with the parties at which it raised sua sponte the question of whether the state had presented sufficient evidence to permit a reasonable jury to find the defendant guilty of attempt to commit murder in light of the fact that the defendant was charged under the attendant circumstances subdivision and not the substantial step subdivision, as is far more common. That same day, the state moved to amend the long form information pursuant to Practice Book § 36-18 to charge the defendant with attempt to commit murder in violation of the substantial step subdivision instead of the attendant circumstances subdivision. The trial court denied the state's motion, reasoning that the state should not be allowed to amend the long form information when it would not have been aware of the potential deficiency if the court had not raised the issue sua sponte.

When the state rested its case, the defense rested without presenting any evidence and moved for a judgment of acquittal with respect to the attempt to commit murder charge, which the trial court denied. With respect to that charge, the trial court instructed the jury only on the attendant circumstances subdivision. The jury found the defendant guilty on all counts, and the trial court sentenced the defendant to a total effective term of eighty years incarceration. At the sentencing hearing, the trial court also denied the defendant's post-conviction motion for a new trial with respect to the sexual assault, assault, and kidnapping charges, and his motion for judgment of acquittal notwithstanding the verdict with respect to the attempted murder charge. This appeal followed.

On appeal, the defendant claims that the attendant circumstances subdivision applies only to situations in which it is impossible for an individual to commit the intended crime due to a mistake of fact.[2] That was

not the situation in the present case, according to the defendant, because he could have killed the victim; his actions simply fell short of causing her death. In making this argument, the defendant relies primarily on our decisions in *State* v. *Gonzalez*, 222 Conn. 718, 609 A.2d 1003 (1992), and *State* v. *Cox*, 293 Conn. 234, 977 A.2d 614 (2009), in which we interpreted the differences between the attendant circumstances and substantial step subdivisions as "significant." Id., 241.

The state concedes that, were we to interpret the attendant circumstances subdivision as requiring evidence of impossibility, then a reasonable jury could not have found the defendant guilty under that subdivision. The state claims, however, that the attendant circumstances subdivision is not limited only to impossibility situations, but also is satisfied when an individual would have completed the intended crime but for certain intervening circumstances. Applying this interpretation to the present case, the state argues that it presented sufficient evidence to prove the defendant's guilt beyond a reasonable doubt because the defendant believed that he had done all that was necessary to kill the victim but did not actually do so because of an intervening circumstance, namely, that the victim pretended to be dead.[3] In making this argument, the state relies on the concurring opinion in *Gonzalez*, as well as our decision in *State* v. *Green*, 194 Conn. 258, 480 A.2d 526 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 964, 83 L. Ed. 2d 969 (1985), both of which indicated that certain conduct can satisfy both the attendant circumstances and substantial step subdivisions. See *State* v. *Gonzalez*, supra, 222 Conn. 729–30 (*Peters*, *C. J.*, concurring in the judgment); *State* v. *Green*, supra, 275.

We conclude that the attendant circumstances subdivision is not limited only to impossibility situations and that, in the present case, the state presented sufficient evidence to permit a reasonable jury to find the defendant guilty of attempt to commit murder under the attendant circumstances subdivision.[4] Accordingly, we affirm the judgment of the trial court.

"In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *Cox*, supra, 293 Conn. 245.

To resolve the defendant's sufficiency of evidence

claim, we must interpret § 53a-49 (a). "Issues of statutory construction raise questions of law, over which we exercise plenary review." (Internal quotation marks omitted.) *State* v. *Brown*, 310 Conn. 693, 702, 80 A.3d 878 (2013). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *State* v. *Buckland*, 313 Conn. 205, 224, 96 A.3d 1163 (2014), cert. denied,      U.S.      , 135 S. Ct. 992, 190 L. Ed. 2d 837 (2015).

"In interpreting the [statutory] language . . . however, we do not write on a clean slate, but are bound by our previous judicial interpretations of the language and the purpose of the statute." *Kasica* v. *Columbia*, 309 Conn. 85, 93–94, 70 A.3d 1 (2013); see also *Hummel* v. *Marten Transport, Ltd.*, 282 Conn. 477, 501, 923 A.2d 657 (2007) (holding that § 1-2z does not require this court to overrule prior judicial interpretations of statutory schemes, even if not based on plain meaning rule). Accordingly, we begin our analysis by examining the text of § 53a-49 (a) and our prior decisions interpreting it.

Section 53a-49 (a) provides: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." In order to determine whether the attendant circumstances subdivision applies only in impossibility situations, as the defendant claims, we turn next to our prior decisions interpreting this statute.

A review of our case law reveals that we have decisions that implicitly contradict one another with respect to whether the attendant circumstances subdivision is

limited to impossibility situations. In *Green*, a case in which the defendant could have completed the intended crime, we determined that the jury could have found the defendant guilty under the attendant circumstances subdivision. See *State* v. *Green*, supra, 194 Conn. 275. In *Gonzalez*, another case in which the defendant could have completed the intended crime, we reached the opposite conclusion, holding that the trial court should not have instructed the jury on the attendant circumstances subdivision. See *State* v. *Gonzalez*, supra, 222 Conn. 724–25. The court was divided in *Gonzalez*, and Chief Justice Peters wrote a concurring opinion, in which she relied on *Green* in stating that the attendant circumstances subdivision applied to the defendant's conduct, even though it was not an impossibility situation, because the defendant was mistaken about the attendant circumstances. Id., 729–30 (*Peters, C. J.*, concurring in the judgment). The majority in *Gonzalez* did not respond to Chief Justice Peters' critique or address *Green*. Since *Green* and *Gonzalez* were decided, we have relied on *Gonzalez* at least once, in *Cox*. See *State* v. *Cox*, supra, 293 Conn. 241–42.

The Appellate Court likewise also has issued decisions that implicitly conflict with one another regarding whether the attendant circumstances subdivision applies only to impossibility situations. Compare *State* v. *Rodriguez*, 139 Conn. App. 594, 616–17, 56 A.3d 980 (2012) (upholding conviction for attempt to commit first degree assault under attendant circumstances subdivision when police prevented defendant from stabbing victim by shooting defendant), cert. denied, 308 Conn. 902, 60 A.3d 286 (2013), *State* v. *Williams*, 44 Conn. App. 231, 238, 689 A.2d 484 (there was sufficient evidence for finding of guilt under attendant circumstances subdivision because jurors "could have reasonably found that the defendant struck the victim in the head with a baseball bat a sufficient number of times to believe that she would die"), cert. denied, 240 Conn. 918, 692 A.2d 815 (1997), and *State* v. *Gilchrist*, 25 Conn. App. 104, 110–11, 593 A.2d 507 (there was sufficient evidence for finding of guilt under attendant circumstances subdivision when defendant shot victim in mouth but victim survived), cert. denied, 220 Conn. 905, 593 A.2d 970 (1991), with *State* v. *Carter*, 141 Conn. App. 377, 385, 61 A.3d 1103 (attendant circumstances subdivision requires proof that defendant's conduct "progressed so far as to constitute the final step in a course of conduct planned to culminate in the commission of the crime"), cert. granted, 308 Conn. 943, 66 A.3d 886 (2013), and *State* v. *Rodriguez*, supra, 617–18 (*Lavine, J.*, concurring) (interpreting attendant circumstances subdivision as applying only to impossibility situations and urging this court to reconsider *Green*).

Not only do we have conflicting decisions, but those decisions, namely *Green* and *Gonzalez*, include little substantive analysis to support their conclusions. For

instance, in *Green*, the court did not expressly decide that the attendant circumstances subdivision applies beyond impossibility situations but, rather, implicitly reached that conclusion by determining that there was sufficient evidence to sustain the defendant's conviction under the attendant circumstances subdivision when the defendant clearly could have completed the intended crime. See *State* v. *Green*, supra, 194 Conn. 271, 274–77. In *Gonzalez*, the court expressly addressed the scope of the attendant circumstances subdivision; *State* v. *Gonzalez*, supra, 222 Conn. 724; but, as the concurrence in *Gonzalez* noted, did not cite to any authority to support its conclusion that the attendant circumstances subdivision applies only when a perpetrator fails to accomplish the intended crime due to a mistake of fact that "render[ed] the commission of the crime impossible." Id.; see id., 729 (*Peters, C. J.*, concurring in the judgment). Moreover, the majority in *Gonzalez* failed to acknowledge the fact that it was implicitly contradicting *Green*, let alone explain why it was choosing to do so. Thus, neither of these cases provides us with a sufficient analytical framework to resolve the present case but, rather, offers only conclusions without explanations. We decline to blindly adopt either of those conclusions and instead undertake a full review of the attendant circumstances subdivision to determine its scope.

We begin our review by examining the text of the attendant circumstances subdivision and conclude that it is susceptible to more than one reasonable interpretation. On the one hand, the text suggests that the subdivision is limited to impossibility situations insofar as it refers to the attendant circumstances, or the lack thereof, as the reason why the intended crime was not completed, instead of the actor's conduct. If the attendant circumstances necessary to commit the crime were not present, as the language of the attendant circumstances subdivision requires, then it is reasonable to conclude that it was impossible to commit the intended crime. On the other hand, the attendant circumstances subdivision does not include the term "impossible" and does not expressly limit its application to impossibility situations. Thus, the statute also can reasonably be read as applying to any situation in which an individual engages in conduct that "would constitute the crime if attendant circumstances were as he believes them to be"; General Statutes § 53a-49 (a) (1); regardless of whether it was possible for the individual to have completed the intended crime. The text of the attendant circumstances subdivision alone therefore is insufficient to resolve the issue presented. Accordingly, we turn to extratextual sources relating to the statute.

The extratextual sources that resolve the issue presented are the commentary to § 53a-49 and the commentary to the criminal attempt provision of the Model Penal Code on which § 53a-49 was based. In 1969, the

legislature enacted § 53a-49 as part of a revision to this state's substantive criminal law, as recommended by the Commission to Revise the Criminal Statutes (commission). See Public Acts 1969, No. 828, § 50; see also *State* v. *Desimone*, 241 Conn. 439, 456, 696 A.2d 1235 (1997). In the commission's comments to the Penal Code, the commission stated that § 53a-49 "is based, in part, [on] the Model Penal Code." Commission to Revise the Criminal Statutes, Penal Code Comments, Conn. Gen. Stat. Ann. § 53a-49 (West 2012) comment, p. 76. The Model Penal Code provision on which § 53a-49 is based is § 5.01 (1), as the language of the attendant circumstances and substantial step subdivisions of § 53a-49 (a) is almost identical to that of the attendant circumstances and substantial step provisions in § 5.01 (1).[5] Compare General Statutes § 53a-49 (a) (1) and (2), with Model Penal Code § 5.01 (1) (a) and (c).

Although neither the commission nor the legislature directly addressed the issue of whether the attendant circumstances subdivision is limited to impossibility situations, the drafters of the Model Penal Code did. In their comments to § 5.01, the drafters first made clear that § 5.01 (1) (a), the analogue to the attendant circumstances subdivision of § 53a-49 (a) (1), applies in impossibility situations. See generally 1 A.L.I., Model Penal Code and Commentaries (1985) § 5.01, comment (3), pp. 307–20 (Model Penal Code and Commentaries). The drafters also noted, however, that, "when [an] actor has done all that he believes to be necessary to commit the offense in question, he has committed an attempt" under § 5.01 (1) (a). Id., comment (4), p. 321. In providing examples of such scenarios, the drafters stated that § 5.01 (1) (a) covers "cases where the contemplated victim is fired upon *but the shots miss or the victim is saved by a miraculous operation*." (Emphasis added.) Id. In both of these examples, the perpetrator failed to complete the intended crime not because it was impossible to do so, but because his actions were insufficient to do so or because some intervening circumstance prevented him from doing so. Thus, there is no question that the drafters of the Model Penal Code intended § 5.01 (1) (a) to apply not only to impossibility situations, but also to situations in which a perpetrator fails to complete the intended crime for some reason other than impossibility.

The comments to § 5.01 (1) of the Model Penal Code are consistent with the broad purpose of § 53a-49 of penalizing individuals who have demonstrated that they pose a threat to society, albeit without completing the intended crime. We previously have stated that the drafters of the Model Penal Code "belie[ved] that the proper concern of the law of attempts is the dangerousness of the actor, as a person manifesting a firm disposition to commit a crime, not the dangerousness of his conduct." (Internal quotation marks omitted.) *State* v. *Sorabella*, 277 Conn. 155, 181 n.29, 891 A.2d 897, cert.

denied, 549 U.S. 821, 127 S. Ct. 131, 166 L. Ed. 2d 36 (2006); accord *United States* v. *Ivic*, 700 F.2d 51, 66 (2d Cir. 1983); see also Model Penal Code and Commentaries, supra, § 5.01, comment (3) (b), pp. 315–16 ("[t]he law of attempts . . . should be concerned with manifestations of dangerous character as well as with preventative arrests"). Surely, a person who, with the intent to commit a crime, goes so far as to "[i]ntentionally [engage] in conduct *which would constitute the crime* if attendant circumstances were as he believes them to be"; (emphasis added) General Statutes § 53a-49 (a) (1); has demonstrated his dangerousness to society because he has taken every step necessary to complete the crime but simply has been thwarted for one reason or another. If anything, an individual generally will have demonstrated his dangerousness to a *greater* extent by engaging in such conduct in situations in which it was possible to have completed the intended crime than in situations in which it was not. Cf. 2 W. LaFave, Substantive Criminal Law (2d Ed. 2003) § 11.5 (a), pp. 240–41 (discussing inherent impossibility situations in which perpetrator employs means so ineffective to attempt intended crime, his conduct is harmless). Thus, interpreting the attendant circumstances subdivision as applying only to impossibility situations would contravene the purpose of § 53a-49 because it would allow individuals who have demonstrated their dangerousness to society by attempting to commit a crime that was possible to complete to nevertheless escape criminal liability.

In sum, the legislature based the attendant circumstances subdivision of § 53a-49 (a) (1) on § 5.01 (1) (a) of the Model Penal Code, and the drafters of the Model Penal Code made clear that § 5.01 (1) (a) is not limited to impossibility situations. Moreover, interpreting that subdivision as applying beyond impossibility situations is consistent with the overarching purpose of § 53a-49. Accordingly, we conclude that the attendant circumstances subdivision is not limited to impossibility situations.

Applying this interpretation to the present case, and construing the evidence in the light most favorable to sustaining the guilty verdict, we conclude that the state presented sufficient evidence for a reasonable jury to find beyond a reasonable doubt that the defendant was guilty of attempt to commit murder in violation of § 53a-54a (a) and the attendant circumstances subdivision of § 53a-49 (a) (1). The state presented evidence that the defendant admitted to the police that he brutally assaulted the victim with the intent to kill her and that he believed that he had killed her. It is reasonable to view this evidence as supporting the conclusion that the defendant acted with the requisite intent to commit murder under § 53a-54a (a) and that he intentionally engaged in conduct that would have constituted murder if the attendant circumstances had been as he believed

them to be, namely, that the victim was actually dead, rather than pretending to be dead. Thus, we conclude that the state presented sufficient evidence and, accordingly, uphold the defendant's conviction of attempt to commit murder.

The defendant argues, contrary to our conclusion, that the attendant circumstances subdivision applies only to impossibility situations for a number of reasons, none of which we find persuasive. First, the defendant argues that, in *Gonzalez* and *Cox*, we unequivocally established that the attendant circumstances subdivision is limited to impossibility situations and that those decisions control in the present case.

With respect to *Gonzalez*, we agree that this court decided that the attendant circumstances subdivision applies only to impossibility situations. See *State* v. *Gonzalez*, supra, 222 Conn. 724–25. We conclude that this issue warrants reconsideration, however, because, as we previously discussed, *Gonzalez* provided little authority to support its conclusion and failed to acknowledge that we previously had drawn the opposite conclusion, albeit implicitly, in *Green*. Indeed, the court in *Gonzalez* did not cite to any authority to support its conclusion that the attendant circumstances subdivision applies only when a perpetrator fails to complete a crime "solely because the 'attendant circumstances' were not as the perpetrator believed them to be, rendering the commission of the crime impossible." Id. The court in *Gonzalez* cited to a 1971 reference manual to the Penal Code that provides that the attendant circumstances subdivision is "directed at" impossibility situations and the substantial step subdivision is "directed at" situations in which the intended crime is not completed for some reason other than impossibility. D. Borden, "Inchoate Offenses," in Judicial Department, Reference Manual: Connecticut Penal Code Title 53a (1971) § 5, pp. 5-5, 5-6; see *State* v. *Gonzalez*, supra, 724–25. This reference manual, however, provides no authority for its interpretation of § 53a-49, and it contradicts the comments to § 5.01 (1) of the Model Penal Code, the provision on which § 53a-49 (a) was based. Thus, we are convinced that *Gonzalez* was incorrect insofar as it determined that the attendant circumstances subdivision is limited to impossibility situations. We therefore overrule *Gonzalez* with respect to that determination.

With respect to *Cox*, the defendant incorrectly relies on that decision because the court's holding in that case did not turn on whether it was possible for the defendant to have committed the intended crime. In *Cox*, the defendant, Willie Cox, was seated in the backseat of a car fleeing a bank robbery when he raised his arms "aggressive[ly]" toward a police officer. (Internal quotation marks omitted.) *State* v. *Cox*, supra, 293 Conn. 237. Cox was convicted of attempt to commit assault

of a peace officer after the trial court instructed the jury only on the attendant circumstances subdivision. Id., 239–40. On appeal, this court reversed the judgment of conviction on the basis that the state had failed to introduce sufficient evidence to prove that Cox had made a mistake of fact. Id., 246–47. Although the state had introduced evidence that Cox had been in possession of a gun, it failed to establish that the gun had been loaded or in working condition, or that Cox even had attempted to use it. Id., 246.

*Cox* therefore is not inconsistent with our holding in the present case. In *Cox*, the court interpreted the attendant circumstances subdivision as requiring evidence that the defendant was mistaken about certain attendant circumstances surrounding the alleged attempt. See id. We agree with that interpretation, and, in the present case, the defendant satisfies that standard because he mistakenly believed that his actions were sufficient to kill the victim. In *Cox*, the court quoted *Gonzalez* for the proposition that the attendant circumstances subdivision is limited to situations of impossibility but did not rely on that principle in reaching its holding. Id., 241–42. Likewise, the court's characterization of the differences between the attendant circumstances and substantial step subdivisions as "significant" was immaterial to its holding and was unsupported, beyond a citation to *Gonzalez*. Id., 241. Thus, *Cox* provides no additional support for the defendant's position, and we overrule *Cox* only to the extent that it relied on *Gonzalez* in reaching its conclusion.

In addition to relying on *Gonzalez* and *Cox*, the defendant also relies on two decisions of New Jersey's intermediate appellate court, namely, *State* v. *Condon*, 391 N.J. Super. 609, 615, 919 A.2d 178 (App. Div.), cert. denied, 192 N.J. 74, 926 A.2d 857 (2007), and *State* v. *Kornberger*, 419 N.J. Super. 295, 302, 16 A.3d 1107 (App. Div.), cert. denied, 208 N.J. 368, 29 A.3d 741 (2011). New Jersey's criminal attempt statute also is based on § 5.01 of the Model Penal Code, and, in *Condon* and *Kornberger*, the Appellate Division of the New Jersey Superior Court interpreted a provision that is identical in all material respects to the attendant circumstances subdivision of § 53a-49 (a) (1) as requiring an individual to have "complete[d] an 'impossible' crime" rather than merely to have taken a substantial step toward completing the intended crime. *State* v. *Kornberger*, supra, 302, citing *State* v. *Condon*, supra, 617. These cases do not support the defendant's position in the present case because they distinguished the attendant circumstances subdivision from the substantial step subdivision on the basis of the degree to which each requires the intended crime to have been completed, not on the basis of whether it was possible to complete the intended crime.

Finally, the defendant claims that we must interpret the attendant circumstances subdivision as applying

only to impossibility situations because to interpret that subdivision otherwise would render it superfluous. See, e.g., *Lopa* v. *Brinker International, Inc.*, 296 Conn. 426, 433, 994 A.2d 1265 (2010) ("[a statute] must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant" [internal quotation marks omitted]). The attendant circumstances subdivision would be superfluous, according to the defendant, insofar as anyone who "engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be"; General Statutes § 53a-49 (a) (1); would necessarily have taken a "substantial step in a course of conduct planned to culminate in his commission of the crime." General Statutes § 53a-49 (a) (2). The state concedes that, under its interpretation of the statute, the attendant circumstances subdivision always would be subsumed by the substantial step subdivision. The implication of the defendant's argument is that we should read the attendant circumstances subdivision as applying only to impossibility situations, and the substantial step subdivision as applying only when an individual fails to complete the intended crime for some reason other than impossibility, as the court did in *Gonzalez*; see *State* v. *Gonzalez*, supra, 222 Conn. 724–25; so that the two subdivisions serve distinct purposes.

Although the substantial step subdivision may subsume the attendant circumstances subdivision, the two subdivisions are not coextensive. The substantial step subdivision criminalizes certain conduct that would fall short of violating the attendant circumstances subdivision. That is, the substantial step subdivision covers situations in which an individual has not engaged in conduct that would constitute the crime if attendant circumstances were as he believed them to be, but, rather, only has taken a substantial step toward committing the crime that is strongly corroborative of his criminal intent. See Model Penal Code and Commentaries, supra, § 5.01, comment (1), p. 299. For instance, a pickpocket who reaches into an empty pocket would be guilty of attempt to commit larceny under both subdivisions; see id., comment (3) (c), pp. 317–18; but a pickpocket who is apprehended immediately before reaching into the empty pocket could be found guilty under only the substantial step subdivision and not the attendant circumstances subdivision. Thus, the distinction between the two subdivisions is the degree of completeness each requires in the course of an actor's conduct. The fact that the substantial step subdivision subsumes the attendant circumstances subdivision most likely was an intentional effort by the drafters of the Model Penal Code to ensure the elimination of the impossibility defense by covering every possible scenario in which it could arise.

Nevertheless, the defendant's proposed solution of distinguishing the two subdivisions from one another

by interpreting the attendant circumstances subdivision as applying only to impossibility situations and the substantial step subdivision as not applying to impossibility situations belies the language of § 53a-49 (a) and the commentary thereto. See General Statutes § 53a-49 (a); Commission to Revise the Criminal Statutes, supra, comment, p. 76. The legislature intended *both* subdivisions to eliminate the defense of impossibility. Indeed, both subdivisions include language that makes an actor's guilt dependent on his subjective beliefs, which prevents a defendant from escaping liability by claiming that it was objectively impossible to commit the intended crime. Compare General Statutes § 53a-49 (a) (1) ("if attendant circumstances were as he believes them to be"), with General Statutes § 53a-49 (a) (2) ("under the circumstances as he believes them to be"). The commission's comment to § 53a-49 makes clear that the legislature intended both subdivisions to have this effect: "[Section 53a-49] sweeps aside any consideration of the defense of impossibility . . . . Under subdivisions . . . (1) and (2), the liability of the actor turns on his purpose, considered in light of his beliefs, and *not on what is actually possible* under existing circumstances." (Emphasis added.) Commission to Revise the Criminal Statutes, supra, comment, p. 76; see also Model Penal Code and Commentaries, supra, § 5.01, comment (3) (c), pp. 317–18 (Model Penal Code provisions on which attendant circumstances and substantial step subdivisions were based both apply to impossibility situations).

Thus, the language of § 53a-49 (a) and the relevant commentary disprove the defendant's claim that one subdivision applies to impossibility situations and the other does not. Both subdivisions apply to impossibility situations, as well as to situations in which it was possible for the perpetrator to have committed the intended crime. We therefore reject the defendant's claim that the attendant circumstances subdivision must be interpreted as being limited to impossibility situations.

The judgment is affirmed.

In this opinion the other justices concurred.

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual assault, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[2] For ease of reference, we refer to these scenarios as impossibility situations. For a complete discussion of what constitutes a situation in which it is impossible to commit a certain crime, see 2 W. LaFave, Substantive Criminal Law (2d Ed. 2003) § 11.5 (a), pp. 230–41, which distinguishes between factual, legal and inherent impossibility.

[3] Alternatively, the state argues that, if we were to interpret the attendant circumstances subdivision as requiring evidence of impossibility, then the defendant's conviction nevertheless should be upheld under the substantial step subdivision because the jury necessarily had to find that the requirements of that subdivision were satisfied in order to find the defendant guilty under the attendant circumstances subdivision. The state further argues that, even if this court disagrees with the foregoing argument, it should remand the case for a new trial on the attempt to commit murder charge because the trial court improperly denied the state's motion to amend the long form information to charge the defendant with attempt to commit

murder under the substantial step subdivision.

[4] Thus, we need not consider the state's alternative arguments for upholding the defendant's conviction or for remanding the case for a new trial on the attempted murder charge.

[5] Comparing the full text of the provisions reveals their similarity. General Statutes § 53a-49 (a) provides: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

In comparison, § 5.01 of the Model Penal Code provides in relevant part: "(1) Definition of Attempt. A person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission of the crime, he:

"(a) *purposely engages in conduct that would constitute the crime if the attendant circumstances were as he believes them to be*; or

"(b) when causing a particular result is an element of the crime, does or omits to do anything with the purpose of causing or with the belief that it will cause such result without further conduct on his part; or

"(c) *purposely does or omits to do anything that, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime. . . .*" (Emphasis added.) 1 A.L.I., Model Penal Code and Commentaries (1985) § 5.01 (1), pp. 295–96.

Thus, it is apparent that the legislature, in enacting § 53a-49 (a), essentially adopted § 5.01 (1) (a) and (c), but not § 5.01 (1) (b). Section 53a-49 (a) (1) parallels § 5.01 (1) (a), and § 53a-49 (a) (2) parallels § 5.01 (1) (c).